[46 NYS3d 557]

Natalie Gordon, on Behalf of Herself and Others Similarly Situated, Appellant, v Verizon Communications, Inc., Respondent, and Lowell C. McAdam et al., Defendants. Jonathan M. Crist et al., Nonparty Respondents.

First Department, February 2, 2017

### APPEARANCES OF COUNSEL

*Faruqi & Faruqi, LLP*, New York City (*Juan E. Monteverde* and *Nadeem Faruqi* of counsel), for appellant.

*Paul K. Rowe*, New York City, for Verizon Communications, Inc., respondent.

*Szenberg & Okum PLLC*, New York City (*Avi Szenberg* of counsel), and *Moshe Balsam*, Far Rockaway, for Jonathan M. Crist, respondent.

*Gerald Walpin*, respondent pro se.

### OPINION OF THE COURT

Kahn, J.

Much has been written on the subjects of whether settlements of shareholder class action suits challenging corporate mergers and acquisitions should be rejected in the absence of monetary damage awards, and the propriety of the attorney fee awards attendant to such agreements.[1] In this case, we are asked to decide the viability of the proposed settlement of a

---

1. *See e.g.* Howard M. Erichson, *Aggregation as Disempowerment: Red Flags in Class Action Settlements*, 92 Notre Dame L Rev 859 (2016); Marianna Wonder, Note, *The Changing Odds of the Chancery Lottery*, 84 Fordham L Rev 2381 (2016); John Stigi & Alejandro Moreno, Corporate & Securities Law Blog, *Delaware Court of Chancery Increases Scrutiny on Disclosure-Only M&A Class Action Settlements*, http://www.corporatesecuritieslawblog.com/2016/03/delaware-court-of-chancery-increases-scrutiny-on-disclosure-only-ma-class-action-settlements/ (Mar. 4, 2016) (accessed Sept. 16, 2016); Gregory A. Markel, Martin L. Seidel & Gillian G. Burns, *Delaware Judges Have Been Heard*, Law360, Feb. 2, 2016, available at http://www.cadwalader.com/uploads/books/25f908c44dc7fc6fc5a0cd481079f775.pdf; Peter Lyons, Linda H. Martin &

putative shareholders' class action challenging, on the basis of alleged material omissions from proxy statements, a corporation's acquisition of all of the shares of an entity owned by its partner in a joint venture. The proposed settlement agreement included certain additional disclosures of the terms of the transaction as well as a corporate governance reform proposal, but lacked any monetary compensation to the shareholders. The proposed settlement further provided for the award of attorneys' fees. We find that under the circumstances presented, and upon application of this Court's standard in *Matter of Colt Indus. Shareholder Litig.* (155 AD2d 154, 160 [1st Dept 1990], *mod on other grounds* 77 NY2d 185 [1991]), as further refined below, approval of that settlement is warranted. Accordingly, we now reverse the order of the Supreme Court and remand the matter for a hearing to determine the appropriate amount of attorneys' fees to be awarded to plaintiff's counsel.

## I. BACKGROUND OF THE CASE

On September 2, 2013, defendant Verizon Communications, Inc. (Verizon) publicly announced that it had entered into a definitive stock purchase agreement with Vodafone Group PLC to acquire Vodafone subsidiaries holding as their principal assets a 45% interest in Cellco Partnership, doing business as Verizon Wireless (Verizon Wireless), for a purchase price of approximately $130 billion, consisting primarily of cash and Verizon common stock (the transaction), thereby effectively altering the status of Verizon Wireless from that of a joint venture of Verizon and Vodafone to that of a wholly owned subsidiary of Verizon.

On September 5, 2013, plaintiff Natalie Gordon filed the instant putative class action on behalf of herself and all of the other holders of outstanding Verizon common stock, which, at that time, exceeded 2.86 billion shares, naming Verizon and the members of its board of directors as defendants. In essence,

Hilary L. Harris, *In re Trulia, Inc. Stockholder Litigation and the Future of Disclosure-Only Settlements*, The M&A Lawyer, vol 20, No. 1 (Jan. 2016); Mark Lebovitch & Jeroen van Kwawegen, *Of Babies and Bathwater: Deterring Frivolous Stockholder Suits without Closing the Courthouse Doors to Legitimate Claims*, 40 Del J Corp L 491 (2016); Peter Lyons, Linda H. Martin & Elizabeth M. Zito, *Delaware Courts Continue to View Disclosure-Only Settlements with Broad Releases as a "Systemic Problem,"* The M&A Lawyer, vol 19, No. 10 (Nov./Dec. 2015); Sean Griffith, *Correcting Corporate Benefit: How to Fix Shareholder Litigation by Shifting the Doctrine on Fees*, 56 Boston Coll L Rev 1 (2015); Browning Jeffries, *The Plaintiffs' Lawyer's Transaction Tax: The New Cost of Doing Business in Public Company Deals*, 11 Berkeley Bus LJ 55 (2014).

the original complaint alleged that Verizon's board of directors had breached its fiduciary duty to Verizon's shareholders by causing Verizon to pay an excessive price for Verizon Wireless stock in the transaction.

On October 8, 2013, Verizon filed with the Securities and Exchange Commission (SEC) a preliminary proxy statement (PPS) setting forth the background and terms of the transaction and certain analyses performed by J.P. Morgan Securities LLC in connection with the transaction.

On October 22, 2013, plaintiff filed an amended class action complaint, in which additional claims were asserted alleging breaches of fiduciary duty resulting from defendants' failure to disclose material information in the PPS concerning the transaction.

In November and December 2013, the parties engaged in negotiations in an effort to resolve this litigation. On December 6, 2013, counsel for the parties reached an agreement in principle to settle this action, with defendants agreeing to disseminate to Verizon's shareholders certain additional disclosures and agreeing that for a period of three years thereafter, in the event that Verizon were to engage in a transaction involving the sale to a third-party purchaser or spin-off of assets of Verizon Wireless having a book value in excess of $14.4 billion, Verizon would obtain a fairness opinion from an independent financial advisor. This agreement in principle was memorialized in a memorandum of understanding (MOU), subject to additional confirmatory discovery.

On December 10, 2013, pursuant to the MOU, Verizon filed a definitive proxy statement (DPS) with the SEC to solicit shareholders to vote in favor of the transaction and scheduled a shareholder vote for January 28, 2014. The DPS included a number of supplemental disclosures not contained in the preliminary proxy materials. Some 99.8% of Verizon's shareholders voted to approve the issuance of shares for the company to acquire Vodafone's 45% interest in Verizon Wireless on January 28, 2014.

Counsel for the parties then proceeded to negotiate the terms of a stipulation of settlement, which terms included a requirement that for the following three years, any disposition of greater than five percent of Verizon's assets would require the fairness opinion of an independent financial advisor. The stipulation of settlement also included an agreement that defendants would not oppose any fee and expense application of

plaintiffs' counsel not exceeding $2 million. On July 21, 2014, the parties filed a written stipulation of settlement with Supreme Court.

On October 6, 2014, the motion court issued a scheduling order which (1) preliminarily certified this action as a class action, (2) preliminarily approved the settlement and (3) scheduled a hearing to determine whether the settlement should receive the final approval of the court as being "fair, adequate and in the best interests of the class" (*Rosenfeld v Bear Stearns & Co.*, 237 AD2d 199, 199 [1st Dept 1997], *appeal dismissed* 90 NY2d 888 [1997], *lv denied* 90 NY2d 811 [1997]).[2]

At the fairness hearing held before the motion court on December 2, 2014, of Verizon's approximately 2.25 million shareholders at the time, only two objectors offered argument and testimony in opposition to the settlement: Jonathan M. Crist, Esq., whose attorney appeared on his behalf, and Gerald Walpin, Esq., who testified on his own behalf. Also testifying was Professor Sean Griffith of Fordham University School of Law, an expert proffered by counsel for objector Crist. Professor Griffith's expert opinion was that fairness opinions involving small asset sales, although not required to be publicly disclosed, are routine and that the requirement of a fairness opinion in this case would not provide any real benefit to Verizon's shareholders.

Following the hearing, on December 22, 2014, the motion court issued an order in which it reversed its preliminary order by declining to approve the settlement. In doing so, the motion court stated that it was moved by the "strong opposition to the proposed settlement voiced by the objectors at the fairness hearing and in their submissions . . . to take a second look at the terms of the proposed settlement and more closely scrutinize it" in order to determine "whether it truly is fair, adequate, reasonable and in the best interest of class members" (*Gordon v Verizon Communications, Inc.*, 2014 NY Slip Op 33367[U], *3 [Sup Ct, NY County 2014]). The motion court examined four of the supplemental disclosures which pertained to valuation and, the motion court reasoned, could potentially materially enhance the disclosure contained in the preliminary proxy

---

2. "Consistent with federal practice (cf. [Fed Rules Civ Pro rule] 23[e][1][c]), New York courts customarily conduct a fairness hearing, on notice, as part of the [settlement] approval process." (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C908:1, citing this Court's decision in *Colt*.)

statement. These supplemental disclosures included: (1) a disclosure that the valuation of Omnitel, another telecommunications company in which Verizon had an interest, was the product of a negotiation between Verizon and Vodafone; (2) the disclosure of details concerning the financial advisor's comparable companies analysis; (3) further detail of the financial advisor's comparable transactions analysis; and (4) the tabular presentation of valuation ranges for Verizon corporate and wireline[3] assets based on FV/EBITDA multiples. As to these supplemental disclosures, the motion court concluded that they "individually and collectively fail[ed] to materially enhance the shareholders' knowledge about the merger" and that "[t]hey provide[d] no legally cognizable benefit to the shareholder class, and cannot support a determination that the Settlement is fair, adequate, reasonable and in the best interests of the class members" (*Gordon v Verizon Communications, Inc.*, 2014 NY Slip Op 33367[U], *11-12 [Sup Ct, NY County 2014]).

Additionally, the motion court found that the corporate governance aspect of the terms of the proposed settlement could curtail Verizon's directors' flexibility in managing minimal asset dispositions. The motion court then denied approval of the settlement and any award of attorney's fees to plaintiff's counsel (*id.* at *13-15).[4]

On February 3, 2015, plaintiff filed a motion to renew and/or reargue her motion for final approval of the settlement of the class action, in support of which she proffered, for the first time, the affidavit of her own expert, Professor Stephen J. Lubben, Harvey Wiley Chair in Corporate Governance & Business Ethics at Seton Hall University School of Law. Plaintiff claimed that Professor Lubben's affidavit refuted Professor Griffith's opinion by stating that the fairness opinion requirement provided a substantial benefit to the shareholders by requiring a valuation analysis that would determine the fairness of the transaction price. Additionally, Professor Lubben dismissed as speculative Professor Griffith's view that the Verizon board of directors would get a fairness opinion regardless of whether a

---

3. As of 2014, Verizon's wireline services included voice, data and video communications products, broadband video and data, corporate networking, data center and cloud services, security and managed network services and local and long distance voice services.

4. The motion court apparently likewise implicitly denied plaintiff's motion for class certification, as it referred to the instant action as a "putative class action" in its decision (*id.* at *1).

requirement for one is imposed. On February 13, 2015, one of the two objectors, Gerald Walpin, filed an affirmation in opposition to the motion and a cross motion for an award of attorney's fees and/or sanctions. On February 19, 2015, plaintiff filed her reply and objection to the cross motion. On March 10, 2015, objector Walpin filed a motion for leave to file a belated reply in further support of his cross motion. On July 31, 2015, the renewal court denied both plaintiff's motion and objector Walpin's motion for leave to file a reply.

## II. DISCUSSION

### A. The Role of Nonmonetary Settlements of Shareholder Class Action Litigation in Promoting Sound Corporate Governance in Mergers and Acquisitions

The rise of nonmonetary class action settlements began in the 1980s and continued into the 1990s, when complaints of corporate misconduct in the context of mergers and acquisitions prompted calls for corporate governance reforms. Often, the perceived need for reform led to the commencement of litigation as a means to address the misfeasance, which would result in settlements with provisions for corporate governance reform or other forms of equitable relief, such as additional disclosures to shareholders in proxy statements, and would be accompanied by an award of reasonable attorneys' fees to shareholders' counsel. During this period, appellate courts, including this Court, often approved such settlements, viewing them as a useful tool in remedying corporate misfeasance (see e.g. Seinfeld v Robinson, 246 AD2d 291 [1st Dept 1998] [two related derivative actions alleging corporate misconduct consolidated and resolved by settlement involving adoption of two corporate governance reforms and an award of attorneys' fees]; Rosenfeld, 237 AD2d at 199 [motion court properly approved "disclosure-only" nonmonetary settlement and awarded attorney's fees where class action complaint sought primarily equitable relief]; Colt, 155 AD2d at 160-163 [class action brought on grounds that defendants had breached their fiduciary duty by seeking to benefit themselves financially as result of a merger; settlement approved but out-of-state shareholder permitted to opt out of class action settlement], mod 77 NY2d 185 [1991] [out-of-state shareholder corporation may not opt out of class but is not bound by terms of settlement to extent that corporation pursues its own action for money damages]).

In the ensuing decades, however, the use of nonmonetary settlements became increasingly disfavored. Complaints arose

that the remedies of "disclosure-only" and other forms of nonmonetary settlements themselves proved problematic because they provided minimal benefits either to shareholders or to their corporations. Both courts and commentators came to view the shareholder class action in this context as a "merger tax" and as a cottage industry for the plaintiffs' class action bar, used to force settlements of nonmeritorious suits and to generate exorbitant attorneys' fees, causing waste and abuse to the corporation and its shareholders.

The increasingly negative view of "disclosure-only" or other forms of nonmonetary settlements was reflected in decisions of courts in both Delaware and New York calling for drastic curtailment of such class action suits, finding them to amount to meritless lawsuits filed in order to raise a threat of enjoining or delaying closure of the transaction, and thereby incentivizing settlement (see e.g. Matter of Trulia, Inc. Stockholder Litig., 129 A3d 884, 887 [Del Ch 2016] [holding that proposed "disclosure-only" settlement was "not fair or reasonable because none of the supplemental disclosures were material or even helpful to Trulia's stockholders" and noting that "scholars, practitioners and members of the judiciary have expressed (concerns) that these settlements rarely yield genuine benefits for stockholders"]; Matter of Allied Healthcare Shareholder Litig., 49 Misc 3d 1210[A], 2015 NY Slip Op 51552[U], *2 [Sup Ct, NY County 2015] ["this proposed ('disclosure-only') settlement offers nothing to the shareholders except that attorneys they did not hire will receive a $375,000 fee and the corporate officers who were accused of wrongdoing, will receive general releases"]; City Trading Fund v Nye, 46 Misc 3d 1206[A], 2015 NY Slip Op 50008[U], *13, 18-20 [Sup Ct, NY County 2015] [holding that disclosure-only settlement of shareholders' class action should not be approved, reasoning that "(w)ithout the court serving as a gatekeeper, plaintiffs who file such li(ti)gation will continue to unjustifiably extract money from shareholders, who get no benefit from the litigation but nonetheless end up paying two sets of attorneys"], revd 144 AD3d 595 [2016] [judgment dismissing action vacated, motion for preliminary approval of settlement and preliminary certification of class granted, and matter remanded for hearing to determine whether settlement should be finally approved by the court and whether plaintiff's counsel should be awarded fees and expenses in the sum of $500,000]).

Although some commentators have opined that recent decisions, including Trulia, Allied Healthcare and the motion

court's decision in *City Trading Fund* may signal the extinction of "disclosure-only" settlements (*see e.g.* Britt K. Latham & James P. Smith III, *The Future of Disclosure-Only Settlements*, NYLJ, May 23, 2016 at 58), this conclusion may be premature. In *City Trading Fund*, this Court reversed a motion court's determination that a proposed "disclosure-only" settlement should not be approved, finding that the motion court's determination was premature where the additional disclosures to be made pursuant to the proposed settlement in that case were "arguably beneficial" to the shareholders (*City Trading Fund*, 144 AD3d at 595). And, in a recent Delaware case, following a merger approved by a nearly unanimous vote of the shareholders, the court found that four additional disclosures made to the shareholders prior to plaintiffs' voluntary dismissal of their class action "worked a modest benefit [to] the stockholders," justifying an award of attorney's fees (*see Matter of Xoom Corp. Stockholder Litig.*, 2016 WL 4146425, *5, 2016 Del Ch LEXIS 117, *14 [Aug. 4, 2016, No. 11263-VCG]).[5] Similarly, recent commentators have called for courts to take a more balanced approach in evaluating nonmonetary class action settlements (*see* Mark Lebovitch & Jeroen van Kwawegen, *Of Babies and Bathwater: Deterring Frivolous Stockholder Suits without Closing the Courthouse Doors to Legitimate Claims*, 40 Del J Corp L 491, 499 [2016]; Sean J. Griffith, *Correcting Corporate Benefit: How to Fix Shareholder Litigation by Shifting the Doctrine on Fees*, 56 Boston Coll L Rev 1, 55 [2015]).

---

5. The settlement in *Xoom* involved the relinquishment of only the personal claims of the plaintiffs, however, and not the rights of the class of shareholders in general. The Delaware Chancery Court reasoned that under these circumstances, the settlement need not provide a material benefit to the shareholders and that a "helpful disclosure" to the shareholders may be sufficient to justify an award of attorneys' fees (*Xoom*, 2016 WL 4146425, *3, 2016 Del Ch LEXIS 117, *17). We note that Delaware law also provides that the Delaware Chancery Court has the discretion to grant class members in a shareholders' class action the right to opt out of a class action and to seek monetary damages where the relief sought is primarily equitable in nature. (*See Matter of Celera Corp. Shareholder Litig.*, 59 A3d 418, 428, 435 [Del 2012], citing *Nottingham Partners v Dana*, 564 A2d 1089, 1101 [Del 1989].) Similarly, our Court of Appeals has held that a class member involved in a nonmonetary class action settlement was not bound by the terms of the settlement to the extent that it required class members to relinquish their claims of money damages. (*Colt*, 77 NY2d at 187-188, 198.) And, the Delaware Supreme Court has affirmed the approval of a shareholders' class action settlement which included opt out rights for class members, even where the approval was over objections that the benefit of the settlement to the class members was de minimis (*Matter of MCA, Inc., Shareholder Litig.*, 785 A2d 625, 631, 640 [Del 2001], *cert denied* 535 US 1017 [2002]).

## B. The Instant Litigation
### 1. Choice of Law

As a threshold matter, we address whether Delaware law or New York law applies in this case, as respondent Verizon is a Delaware corporation. Where the parties have made an agreement including an explicit choice-of-law clause and the chosen jurisdiction bears a reasonable relationship to the parties or the transaction in question, the courts will honor the parties' choice (*Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 629 [2006]). Here, the proposed settlement included a clause stating that the settlement "shall be governed by and construed in accordance with the laws of the State of New York," and Verizon's principal office is located in New York. Thus, the parties have made a reasonable choice to apply New York law. Accordingly, while the decisions of the Delaware courts provide some guidance on the issues presented on this appeal, it is New York law that governs our review of the nonmonetary settlement presented here.

### 2. The Parties' Proposed Settlement

In its capacity as gatekeeper, a court conducting a settlement review in a putative shareholders' class action has a responsibility to preserve the viability of those nonmonetary settlements that prove to be beneficial to both shareholders and corporations, while protecting against the problems with such settlements recognized since *Colt*, in order to promote fairness to all parties. Such a review must begin by examining the proposed settlement through the lens of each of the factors we have articulated in our longstanding standard in *Colt*: the likelihood of success, the extent of support from the parties, the judgment of counsel, the presence of bargaining in good faith, and the nature of the issues of law and fact.

With respect to the first *Colt* factor, the likelihood of success on the merits, we have stated that courts are to weigh that factor "against the . . . form of the relief offered in the settlement" (*Colt*, 155 AD2d at 160). Here, plaintiff withdrew her claims for monetary damages upon recognizing that they would be difficult to prove at trial. It would be speculative, at best, to assume that plaintiff could have obtained any more helpful disclosures from Verizon by proceeding to trial. The negotiation process, however, provided certainty that plaintiff would obtain at least some additional disclosures, as well as the corporate governance reform she sought. Thus, this factor weighs in favor of approval of the proposed settlement.

With respect to the second *Colt* factor, the extent of support from the parties for the proposed settlement, although the notice of settlement and final approval was mailed to approximately 2.25 million Verizon shareholders, only three objections to the settlement were filed, all by attorney stockholders, and fewer than 250 Verizon shareholders, or .01 percent, opted out of the settlement. And on this appeal, neither the parties nor the objectors have opposed the proposed settlement. Rather, their sole opposition is to the award of attorneys' fees. Because the settlement had the overwhelming support of Verizon shareholders, the second factor also weighs in favor of the proposed settlement.

The third factor to be considered is the judgment of counsel. Here, the parties were represented by counsel who were competent and experienced in the field of complex class action litigation involving breach of fiduciary duties. Thus, counsel were equipped to assist their respective clients in making a reasonable and informed judgment regarding the fairness of the proposed settlement. Thus, this factor also weighs in favor of the proposed settlement.

With regard to the fourth factor, the presence of bargaining in good faith, negotiations are presumed to have been conducted at arm's length and in good faith where there is no evidence to the contrary (*see Matter of Advanced Battery Tech., Inc. Sec. Litig.*, 298 FRD 171, 179-180 [SD NY 2014]). Here, there being no evidence to the contrary, good faith bargaining between petitioner and respondents in arriving at the settlement is presumed, and this factor also weighs in favor of the settlement.

With respect to the fifth *Colt* factor, the nature of the issues of law and fact, here, plaintiff has abandoned her claims for monetary relief. The remaining issue presented is whether respondents breached their fiduciary duty by failing to make adequate disclosures to the shareholders in the preliminary proxy statement. This issue was more expeditiously resolved by the negotiated settlement process, in which the parties had the opportunity to identify and agree upon the areas in which further disclosure of information would be appropriate. Indeed, a settlement in principle on these issues was reached after two months of discussion. Thus, in this case, each of the five factors set forth by this Court in *Colt* weighs in favor of the proposed settlement.

This does not end the inquiry, however. More than two decades of mergers and acquisitions litigation following *Colt*

have been informative as to the need to curtail excesses not only on the part of corporate management, but also on the part of overzealous litigating shareholders and their counsel. Accordingly, a revisiting of our five-factor *Colt* standard is warranted in order to effect an appropriately balanced approach to judicial review of proposed nonmonetary class action settlements and provide further guidance to courts reviewing such proposed settlements in the future.

An approach so informed must necessarily take into account two additional factors. First, as plaintiff argues, the agreed-upon disclosures, corporate governance reforms and any other forms of nonmonetary relief in a proposed settlement should be in the best interests of all of the members of the putative class of shareholders (*see Colt*, 77 NY2d at 195 [a judgment should "benefit() the class as a whole"]; *Rosenfeld v Bear Stearns & Co., Inc.*, 237 AD2d at 199 ["The IAS Court properly approved as fair, adequate and in the best interests of the class a (nonmonetary) settlement"]). And second, the proposed settlement should be in the best interest of the corporation (*see Maher v Zapata Corp.*, 714 F2d 436, 466 [5th Cir 1983] ["a settlement may fairly, reasonably, and adequately serve the best interest of a corporation . . . even though no direct monetary benefits are paid by the defendants to the corporation"]) and should not be merely a vehicle for the generation of fees for plaintiff's or class counsel. Accordingly, we now refine our *Colt* standard of review to add to the five established factors to be used by courts to ensure appropriate evaluation of proposed nonmonetary settlements of class action suits these two additional criteria: whether the proposed settlement is in the best interests of the putative settlement class as a whole, and whether the settlement is in the best interest of the corporation.

Application of the sixth factor of our enhanced standard, whether the proposed settlement is in the best interests of the putative settlement class as a whole, requires a review of whether the key aspects of the proposed settlement would benefit the Verizon shareholders. Here, such a review reveals that due to the intervention of plaintiff, supplemental disclosures to Verizon shareholders were made in four categories.

As to the first category of supplemental disclosures, the valuation of the Omnitel interest, the Verizon shareholders were informed of the names of all three of the investment advisors that valued that interest, eliminating any speculation by

shareholders as to the source of the valuation analysis, i.e., whether the valuation analysis was performed by investment advisors or was the result of a self-serving valuation by Verizon management. This disclosure was of some benefit to the shareholders.

With regard to the second category, disclosures pertaining to the comparable companies analysis, the disclosure of factors considered by a financial advisor in including or excluding companies in that analysis allowed the Verizon shareholders to assess whether AT&T's exclusion from that analysis provided some benefit to the shareholders (see *West Palm Beach Police Pension Fund v Gottdiener*, 2014 NY Slip Op 32777[U], *4 [Sup Ct, NY County 2014] [settlement approved where disclosure included "factors considered by the financial advisor in including or excluding companies in the Selected Companies Analysis"]).

Third, the provision of further detail as to the financial advisor's use of operating and financial metrics in its comparable transactions analysis likewise provided some benefit to the shareholders (see *id.*, citing *Bhat v Global Defense Tech. & Sys., Inc.*, 2011 WL 3983390, 2011 Del Ch LEXIS 216, *12 [Sept. 8, 2011, No. 6269-CS, Strine, Chancellor] [approving settlement where disclosures were made of information regarding the precedent transactions analysis, which disclosures were found to be beneficial to shareholders]).

Finally, the tabular presentation of premiums paid in precedent minority buy-in transactions distilled a series of complex transactions into a more accessible format, and thereby provided some additional benefit for shareholders, albeit minimal in nature.

The most beneficial aspect of the proposed settlement to the shareholders, however, was its inclusion of a fairness opinion requirement, mandating that in the event that Verizon engages in a transaction involving the sale or spin-off of assets of Verizon Wireless having a book value of in excess of $14.4 billion, Verizon would obtain a fairness opinion from an independent financial advisor, or, in the case of a spin-off, financial advice from an independent financial advisor. This prospective corporate governance reform provided a benefit to Verizon shareholders in mandating an independent valuation, without restricting the flexibility of directors in making a pricing determination.

Our decision in *Seinfeld v Robinson* (246 AD2d 291 [1st Dept 1998]) underscores the significance of corporate governance

reforms in assessing whether a proposed settlement is in the best interests of the shareholders and merits approval. In *Seinfeld*, we evaluated a proposed settlement of two consolidated shareholders' derivative actions alleging corporate misconduct, which proposed settlement called for the adoption of two corporate governance reform resolutions in the wake of a corporate scandal involving the hiring of an outside investigator to gather evidence in an attempt to discredit a competing investment banker (*Seinfeld*, 246 AD2d at 293). One of the resolutions required approval by the corporation's general counsel of the hiring of any outside investigators if the cost were to exceed $150,000 and confirmation from any such hired investigators that they have read and will follow the corporation's code of conduct (*id.*). The second resolution provided that for four years the corporation would not acquire more than 50% of any investment-banking business unless it was approved by a majority of the outside directors (*id.* at 293-294). This Court reversed so much of the order as denied the plaintiffs' application for attorney's fees, reasoning that corporate governance reforms included in the settlement constituted a sufficient, albeit nonmonetary, benefit to the shareholders to warrant not only the motion court's approval of the settlement, which was unchallenged on appeal, but also an award of attorneys' fees to the shareholders' counsel (*Seinfeld*, 246 AD2d at 297, 300). In *Seinfeld*, this Court stated that although the benefits conferred on the shareholders were contingent upon occurrences unlikely to recur, "it [was] neither gratuitous nor futile for concerned shareholders to establish a policy specifically tailored to stifle" their recurrence (*id.* at 298).

Similarly, here, as in *Seinfeld*, although the corporate governance reform of imposing a fairness opinion requirement is contingent upon Verizon's engagement in a transaction involving the sale of Verizon Wireless assets valued in excess of $14.4 billion, having such a corporate governance reform in place to safeguard the valuation of corporate assets in the event of such a sale constitutes a sufficient benefit to the putative class of shareholders as a whole to warrant approval of the proposed settlement in this case, under the circumstances presented[6] (*see Colt*, 77 NY2d at 195; *Rosenfeld v Bear Stearns & Co., Inc.*, 237 AD2d at 200).

---

**6.** It is of no moment that *Seinfeld* involved a shareholders' derivative action while the instant case is a putative class action. "The form of suit is not

To ensure fairness, our seventh factor requires the reviewing court to examine whether the proposed settlement is in the best interest of the corporation, recognizing that the lack of a monetary or quantifiable benefit to the corporation does not necessarily preclude such a finding (*see Maher v Zapata Corp.*, 714 F2d at 466-467). Again, the proposed settlement would resolve the issues in this case in a manner that would reflect Verizon's direct input into the nature and breadth of the additional disclosures to be made and the corporate governance reform to be included as part of the proposed settlement. And, by agreeing to the settlement, Verizon avoided having to incur the additional legal fees and expenses of a trial.

■ Viewing in totality the five established *Colt* factors and the two factors we now add to refine our standard, we find that the proposed settlement meets the enhanced standard we announce here.

In comparison to our new standard, on the subject of the factors to be considered in determining whether a class action settlement merits approval, the Delaware Chancery Court has stated:

> "Although Delaware has long favored the voluntary settlement of litigation, the fiduciary character of a class action requires the Court to independently examine the fairness of a class action settlement before approving it. Approval of a class action settlement requires more than a cursory scrutiny by the court of the issues presented. The Court must exercise its own judgment to determine whether the settlement is reasonable and intrinsically fair. In doing so, the Court evaluates not only the claim, possible defenses, and obstacles to its successful prosecution, but also the reasonableness of the give and the get, or what the class members receive in exchange for ending the litigation" (*Matter of Trulia, Inc. Stockholder Litig.*, 129 A3d 884, 890-891 [Del Ch 2016] [internal quotation marks omitted]).

a deciding factor; rather, the question to be determined is whether a plaintiff, in bringing a suit either individually or representatively, has conferred a benefit on others" (*Goodrich v E.F. Hutton Group, Inc.*, 681 A2d 1039, 1044 n 5 [Del 1996], quoting *Tandycrafts, Inc. v Initio Partners*, 562 A2d 1162, 1166 [Del 1989] [other citations omitted]).

As cases such as *Colt* demonstrate, New York courts, like their Delaware counterparts, independently examine class action settlements before approving them, using comparable standards. The *Colt* factors of "likelihood of success on the merits" and "the nature of the issues of law and fact" are comparable to the "claim, possible defenses, and obstacles" factors in *Trulia*, and "the reasonableness of the 'give' and 'get' or what class members receive in exchange for ending the litigation" is covered by the "best interests of the settlement class as a whole" factor we now add to that standard. The addition of that factor to the standard, together with the "best interests of the corporation" factor, assures an appropriately balanced standard of review.

Two cases respondent Crist urges this Court to consider do not support his position. As stated above, the decision of the motion court in *City Trading Fund v Nye* (46 Misc 3d 1206[A], 2015 NY Slip Op 50008[U] [Sup Ct, NY County 2015]) has been reversed by this Court (144 AD3d 595 [2016]), and, in any case, relying on Delaware law, focused primarily upon the materiality of the disclosures, rather than application of the *Colt* standard.

This case is distinguishable from the other case upon which respondent Crist relies, *Matter of Allied Healthcare Shareholder Litig.* (49 Misc 3d 1210[A], 2015 NY Slip Op 51552[U] [Sup Ct, NY County 2015]). In *Allied Healthcare*, the court, in rejecting the proposed settlement, similarly omitted any analysis employing our *Colt* standard. Rather, the *Allied Healthcare* court, citing only the motion court's decision in *City Trading Fund* and the decision of the motion court in this case, rejected the proposed settlement on the ground that it offered no benefit to the shareholders (*id.* at *2) and that the additional disclosures to be made pursuant to the proposed settlement could not be "characterized as significant nor would the failure to make any of the additional disclosures have resulted in this Court issuing a preliminary injunction to prevent or delay the merger" (*id.* at *1). Here, for the reasons stated above, the additional disclosures provided some benefit to the shareholders, however.

Likewise, the motion court's analysis in this case failed to include all five factors of our established *Colt* standard. Furthermore, in invoking the materiality standard, the motion court here, as did the *City Trading Fund* motion court, relied upon Delaware law. The view of the motion court in this case that additional information provided to shareholders in a

disclosure must contradict what has been previously disclosed in order for the disclosure to be material is not supported by New York law, however.

Additionally, the motion court's concern that the mandatory fairness opinion requirement may operate to curtail Verizon directors' flexibility and ability to employ their collective bargaining experience is, at best, speculative. The provision was acceptable to Verizon and its management.

Finally, the motion court also expressed concern that approval of the settlement would amount to approval of an unwarranted release of Verizon's corporate officers and directors from all monetary claims from the entire class of Verizon's shareholders. The shareholders had the right to seek exclusion from the settlement to the extent necessary to preserve their monetary claims, however. Moreover, only two objectors appeared at the hearing, not any of the other shareholders, and those two objectors are not now objecting to the settlement. Thus, none of the shareholders was divested of his or her rights.

With respect to the view expressed in the concurrence that this Court should not add new factors to a long-established legal standard without affording the parties an opportunity to brief these matters, this Court is under no such obligation. Moreover, to insist on a briefing whenever this Court is contemplating a refinement of a common-law standard is inconsistent with longstanding principles governing the unfettered duty of the courts to articulate and to refine the common law in those cases where the Court deems it necessary to do so. "It is emphatically the province and duty of the [courts] to say what the law is" (*Marbury v Madison*, 1 Cranch [5 US] 137, 177 [1803]). As our Court of Appeals has stated,

> "while legislative bodies have the power to change old rules of law, nevertheless, when they fail to act, it is the duty of the court to bring the law into accordance with present day standards of wisdom and justice rather than 'with some outworn and antiquated rule of the past' " (*Woods v Lancet*, 303 NY 349, 355 [1951], quoting *Funk v United States*, 290 US 371, 382 [1933]).

As explained by the Honorable Benjamin N. Cardozo, who was then serving as an Associate Judge of our Court of Appeals, "The common law does not work from pre-established truths . . . . 'The rules and principles of case law have never

been treated as final truths, but as working hypotheses, continually retested in those great laboratories of the law, the courts of justice' " (Benjamin N. Cardozo, *The Nature of the Judicial Process* at 22-23 [Yale University Press 1921, reprinted by Kessenger Publishing], quoting Munroe Smith, *Jurisprudence* at 21 [Columbia University Press 1909]).

The cases cited by the concurrence, on the other hand, do not address the Court's ability to develop the law on an appeal where, as here, the issue has been fully briefed and the standard applied by the nisi prius court has been challenged, but instead concern the failure of the parties to brief and thus preserve an issue for appeal. Those cases are, therefore, inapposite (*see Pullman v Silverman*, 28 NY3d 1060 [2016]; *Matter of Rossi v New York City Dept. of Parks & Recreation*, 127 AD3d 463, 478 [2015, Tom, J.P., dissenting in part]).

Furthermore, the concurrence fails to acknowledge that the sixth factor of our refined standard—whether the settlement benefits the class as a whole—has already been established by the Court of Appeals as a benchmark by which nonmonetary settlements are to be evaluated, subsequent to this Court's announcement of the five-part *Colt* standard (*see Colt*, 77 NY2d at 195).

Because the *Colt* standard has not been revisited in 25 years, and given the changing circumstances and concerns surrounding nonmonetary settlements of class actions during that time, this case, which raises the issue of whether a proper standard of review of a nonmonetary class action settlement was applied by a nisi prius court, is precisely the kind of case in which this Court must fulfill its duty to refine our common-law standard of review to address present day concerns.

For the foregoing reasons, we conclude that, upon application of our established *Colt* criteria as enhanced by the additional factors included in our refined standard, approval of the proposed settlement is warranted.

### 3. Attorneys' Fees

■ As previously noted, objectors Crist and Walpin have challenged the fee award to plaintiff's counsel set forth in the settlement agreement. We have concluded, however, that the benefits to Verizon's shareholders achieved by plaintiff's counsel were sufficient to warrant an award of attorneys' fees.

Where a challenge is made to the award of attorneys' fees which has been designated in an agreement of settlement of a

shareholders' action, the matter should be "addressed to the discretion of the Court in the exercise of its equitable powers" (*Seinfeld v Robinson*, 246 AD2d at 300 [internal quotation marks omitted]).

In making that determination, the motion court should consider the following well-established factors: the time and labor required; the difficulty of the questions involved; the skill required to handle the issues presented; the experience, ability and reputation of counsel; the proposed amount of fees; the benefit resulting to the putative class from the services; the customary fee charged for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved (*Matter of Freeman*, 34 NY2d 1, 9 [1974]).

The court should also consider the stage of the litigation at which the settlement occurred (*Xoom*, 2016 WL 4146425, *5, 2016 Del Ch LEXIS 117, *14-15). In this case, the stipulation of settlement was filed on July 21, 2014, nearly 11 months after the merger was announced and plaintiff's suit was commenced in early September 2013. The parties began negotiations in November 2013 and reached an agreement in principle in December 2013, resulting in the filing of the definitive proxy statement (DPS) on December 10, 2013 which included the additional disclosures and corporate governance reform provision. On January 28, 2014, following the filing and mailing of the DPS, 99.8% of Verizon's shareholders voted to approve the merger transaction. And subsequent to the filing of the stipulation of settlement, out of 2.25 million Verizon shareholders, only three shareholders filed objections to the settlement, only two of those objectors appeared at the December 2, 2014 fairness hearing and fewer than 250 Verizon shareholders opted out of the settlement.

As we observed in *Seinfeld*, there have been "a significant number of cases where courts have termed the benefits of the derivative litigation before them to be 'scant,' 'slight,' 'modest,' or even 'minimal,' and have nevertheless granted attorneys' fees, albeit fees largely reduced from the sums demanded" (*Seinfeld v Robinson*, 246 AD2d at 297). The fact that this litigation is in the form of a putative class action suit and not derivative litigation, such as in *Seinfeld*, has no bearing on the principle that a settlement court should have discretion to award attorney's fees in an amount commensurate with the degree of benefit obtained by the class as a result of the litiga-

tion (*see* n 6, *supra*). Thus, we conclude that this matter should be remanded to the motion court for a determination of the appropriate amount to be awarded.

Accordingly, the order of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered December 22, 2014, which, to the extent appealed from as limited by the briefs, denied plaintiffs' motion for final approval of a proposed settlement, should be reversed, on the law, the facts, and in the exercise of discretion, without costs, the motion granted, the proposed settlement approved, and the matter remanded for further proceedings consistent herewith. The appeal from the order of the same court (Anil Singh, J.), entered August 3, 2015, which, to the extent appealed from, denied plaintiff's motion to renew, should be dismissed, without costs, as academic.

MOSKOWITZ, J. (concurring). I believe that the majority goes much further than is necessary to determine this appeal, purporting to set forth a new seven-part test to enhance the one established in *Matter of Colt Indus. Shareholder Litig.* (155 AD2d 154, 160 [1st Dept 1990], *mod on other grounds* 77 NY2d 185 [1991]). But no party to this appeal took issue with the existing *Colt* test, and therefore, neither party has had a chance to address this purported new standard. And even putting aside the fact that neither party has briefed the matter, we need not adopt a new standard to determine the issues before us, as the trial court considered only one of the five existing *Colt* factors before declining to approve the settlement (*RSB Bedford Assoc., LLC v Ricky's Williamsburg, Inc.*, 91 AD3d 16, 22 [1st Dept 2011] [unnecessary to reach issue that is irrevelant under the contracts at issue in the action]).

As we have held, a court should approve the proposed settlement of a class action under CPLR 908 where the settlement is "fair, adequate and in the best interests of the class" (*Rosenfeld v Bear Stearns & Co., Inc.*, 237 AD2d 199, 199 [1st Dept 1997], *appeal dismissed* 90 NY2d 888 [1997], *lv denied* 90 NY2d 811 [1997]). CPLR 908 itself is silent on the factors to be considered in approving a class action settlement. As the majority notes, however, in reviewing a proposed class action settlement to determine whether it is in the class members' best interests, a court should consider "[1] the likelihood of success, [2] the extent of support from the parties, [3] the judgment of counsel, [4] the presence of bargaining in good faith, and [5] the nature of the issues of law and fact" (*Colt*, 155 AD2d at 160). To these already-existing factors, the majority proposes adding two new

ones: "whether the proposed settlement is in the best interests of the putative settlement class as a whole, and whether the settlement is in the best interest of the corporation" (majority op at 158).

As I have noted above, however, no party to this appeal has argued that the existing five-factor *Colt* test is inadequate to the task of evaluating a class action settlement. For one thing, no party maintains on appeal that a court considering approval of a proposed class action settlement should consider whether the settlement is in the corporation's best interests. In my view, this Court should not add a new factor to a long-established test without giving the parties the opportunity to brief the matter (*see e.g. Pullman v Silverman*, 28 NY3d 1060, 1062 n [2016, Fahey, J., concurring] [noting that Court declines to address a matter that the parties did not brief]; *see also Matter of Rossi v New York City Dept. of Parks & Recreation*, 127 AD3d 463, 478 [1st Dept 2015, Tom, J., dissenting in part]).

Further, plaintiff argues on her appeal not that the trial court should have considered factors in addition to the five set forth in *Colt*, but that the trial court "focused solely on the benefits conferred on the settlement class as a whole." But in her opening brief, plaintiff appears to conflate the factors in *Colt* with the overarching requirement, set forth in *Rosenfeld*, that the settlement be "fair, reasonable and in the best interests of the class." Not only is this requirement not a factor in the *Colt* test, but it is already subsumed in the relevant case law such as *Rosenfeld* (*see also Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d 63, 73 [2d Dept 2006]).*

Thus, I part ways with the majority on its conclusion that we should analyze the proposed class settlement under a new seven-factor test. Rather, I believe that we should approve the proposed class settlement under the rubric of the existing five-factor *Colt* test, as the proposed settlement under that test is fair, adequate, and in the class members' best interest (*see Rosenfeld*, 237 AD2d at 199). I do agree with the majority, however, that we should remand the matter to the trial court for determination of the proper attorneys' fees.

ANDRIAS, J.P., and SAXE, JJ., concur with KAHN, J.; MOSKOW-ITZ, J., concurs in a separate opinion.

---

* Plaintiff appears to concede in her reply brief that the five factors relevant to deciding the propriety of a proposed class action settlement are "[i] the likelihood of success, [ii] the extent of support from the parties, [iii] the judgment of counsel, [iv] the presence of bargaining in good faith, and [v] the nature of the issues of law and fact."

Order, Supreme Court, New York County, entered December 22, 2014, reversed, on the law, the facts, and in the exercise of discretion, without costs, the motion granted, the proposed settlement approved, and the matter remanded for further proceedings consistent herewith. Appeal from order, Supreme Court, New York County, entered August 3, 2015, dismissed, without costs.