OPINION OF THE COURT
Shirley Werner Kornreich, J.
Before the court is plaintiff’s unopposed motion for final approval of the parties’ class action settlement agreement (the settlement) (see NY St Cts Elec Filing [NYSCEF] Doc No. 35),[1] certification of the settlement class, and an award of $440,000 in attorneys’ fees and expenses for the two class counsel law firms, Chimicles & Tikellis LLP (C & T) and Wolf Haldenstein Adler Freeman & Herz LLP (WHAFH).[2] The court granted final approval on the February 2, 2017 record and reserved on the attorneys’ fees award pending supplemental submissions. {See NYSCEF Doc No. 56, Feb. 2, 2017 tr at 7.) For the reasons *193 that follow, the court further elaborates on the basis for approving the settlement in light of a recent change in controlling First Department law, certifies the settlement class, and awards $440,000 in attorneys’ fees to class counsel.
This case concerned the reduction of a company’s reporting obligations by virtue of a going private transaction and the allegedly inadequate disclosure of the transaction’s implications to the company’s bondholders. The relevant underlying facts are set forth succinctly in plaintiff’s moving brief:
“This Action arose in connection with [The Phoenix Companies, Inc.’s (Phoenix)] consent solicitation launched on January 7, 2016 (the ‘Consent Solicitation’). Phoenix, a then-publicly traded company on the New York Stock Exchange (‘NYSE’), had entered into a merger agreement (the ‘Transaction’) whereby [Nassau Reinsurance Group Holdings, L.P (Nassau)] agreed to purchase 100% of Phoenix’s common stock in exchange for cash consideration. The merger agreement provided that Nassau would assume the existing obligation to Bondholders, but required Phoenix to use its best efforts to amend the Company’s existing reporting obligations to Bondholders set forth in § 704 of the governing Indenture. The amendment was designed to eliminate almost all of those reporting obligations. Among other rights governed by the Indenture, § 704 provided Bondholders the right to receive annual and quarterly financial statements and other company and financial information. . . . However, as contemplated by the Transaction agreement, on January 7, 2016, Phoenix disseminated a Consent Solicitation statement filed with the Securities and Exchange Commission (‘SEC’) attached to a Form 8-K (‘Solicitation Statement’) that sought the Bondholders’ consent to a proposed Fourth Supplemental Indenture (in exchange for a payment of $0.06 per $25 increment). This proposal would have amended § 704 to require the Company to issue financial and company reports solely to the Trustee, which owed no duty to examine these reports. However, as alleged, the Solicitation Statement did not adequately inform Bondholders that following consummation of the Transaction, Phoenix had planned on delisting the Bonds and seeking a reporting exemption, thereby ceasing all financial *194 reporting to Bondholders and placing Bondholders (and the market) in the dark. Plaintiff also alleged that the Solicitation Statement failed to disclose how this amendment would impact the value and market for the Bonds, and thus Bondholders were unable to appreciate the consequences of their consenting to the amendment. Plaintiff’s counsel, after rigorous review of the SEC and insurance regulatory filings, concluded that if no action was taken, the amendment would have significantly harmed Bondholders’ rights and interests.” (NYSCEF Doc No. 46 at 7-8.)
Plaintiff, one of Phoenix’s bondholders, commenced this putative class action on February 8, 2016. The parties settled quickly, executing a memorandum of understanding on February 24, 2016, pursuant to which agreed-upon supplemental disclosures were promptly provided to the class.[3] After receiving the requisite regulatory approvals, the transaction closed on June 20, 2016. (See id. at 10.) The settlement was executed on September 14, 2016. (See NYSCEF Doc No. 35.) “The salient terms of the proposed Settlement are summarized” in plaintiff’s brief, and they provide, inter alia, for bondholders to “receive ongoing, timely and accurate financial and corporate reports,” that “[t]he Fourth Supplemental Indenture was amended to secure for Bondholders the right to receive the financial and company reports identified in § 704 of the Indenture,” and that “[prospective purchasers, market makers and securities analyst will be given timely access to reports of Phoenix’s financial and corporate information.” (See NYSCEF Doc No. 46 at 11.)
Plaintiff moved for preliminary approval of the settlement on September 20, 2016. By order dated November 18, 2016, the court granted the motion, approved the proposed class notice, and scheduled a final approval hearing for February 2, 2017. (See NYSCEF Doc No. 30.) After providing notice to the class, plaintiff filed the instant motion for final approval on December 16, 2016. No objections were filed, nor did any class member appear at the hearing or request to opt out. As noted earlier, the court granted final approval on the hearing record and reserved on the attorneys’ fees application pending supplement submissions.
*195 As an initial matter, as noted on the record, the settlement is outstanding. It provides for expeditious beneficial relief for the class that affords them material remedial disclosures without the need for protracted, costly litigation. While disclosure-only settlements resolving pre-merger lawsuits are the subject of much controversy and often properly viewed with a fair degree of skepticism (see Gordon v Verizon Communications, Inc., 148 AD3d 146, 148, 154-155 [1st Dept 2017], citing In re Trulia, Inc. Stockholder Litig., 129 A3d 884, 890 [Del Ch 2016]), this case lacks the pernicious indicia of a frivolous “strike suit” seeking a “merger tax.” Here, the gravamen of plaintiff’s complaint is a challenge to the disclosure implications of the merger, which the court finds to have been well-founded. The terms of the settlement sufficiently remedy plaintiff’s concerns. Thus, under the five traditional class action settlement approval factors (see Matter of Colt Indus. Shareholder Litig., 155 AD2d 154, 160 [1st Dept 1990], affd as mod 77 NY2d 185 [1991]), as well as the two new factors recently announced by the First Department (see Gordon, 148 AD3d at 158-160), the settlement in this case easily passes muster.
With respect to the first factor, settling for complete remedial material disclosure easily satisfies the requisite merits balancing inquiry. (See Gordon, 148 AD3d at 155-157.)[4] The second factor is satisfied because no class member objected. (See id. at 157-158.) The third factor is satisfied given counsels’ experience and their exemplary and expeditious resolution of this case. (See id.) “With regard to the fourth factor, the presence of bargaining in good faith, negotiations are presumed to have been conducted at arm’s length and in good faith where [as here] there is no evidence to the contrary.” (Id. at 157.) The fifth factor is satisfied due to the clear sufficiency of the remedial disclosures provided by the settlement. (See id.) The two new factors announced in Gordon are clearly met in this case. “[T]he proposed settlement is in the best interests of the puta *196 tive settlement class” because it affords them all of the disclosure they could reasonably have expected to obtain without the need for protracted and expensive litigation. (See id. at 158.) Likewise, “the settlement is in the best interest of the corporation” because “the proposed settlement would resolve the issues in this case” without the company incurring any monetary liability and by providing disclosure similar to that made available prior to the transaction; and, of course, “by agreeing to the settlement, [the company] avoided having to incur the additional legal fees and expenses of a trial.” (See id. at 158, 161.) The settlement is approved.
Next, the court certifies the settlement class.
“CPLR 901 (a) sets forth five prerequisites to class certification:
“1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
“2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
“3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
“4. the representative parties will fairly and adequately protect the interests of the class; and
“5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” (City of New York v Maul, 14 NY3d 499, 508 [2010] [internal quotation marks omitted].)
“These factors are commonly referred to as the requirements of numerosity, commonality, typicality, adequacy of representation and superiority.” (Id.)
The numerosity factor is present because, “as of July 5, 2016, there were an estimated 80 record holders of the Bonds and many more beneficial owners of the Bonds residing throughout the United States.” (NYSCEF Doc No. 46 at 21; see Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 399 [2014] [“the legislature contemplated classes involving as few as 18 members” and “numerosity is presumed at a level of 40” (citations omitted)].) The commonality and typicality factors are present “because Plaintiff’s claims in this Action are exactly that of the other Class members, and require the Court to ad *197 dress a series of the same legal and factual questions involving the propriety of the same conduct, i.e., the proposed amendment to the Indenture and Consent Solicitation.” (See id. at 22.) The adequacy of representation factor is present because
“Plaintiff is: (1) a member of the Class he seeks to represent and has the same interests and injuries as other Class members; (2) maintained an interest in prosecuting the Action; and (3) retained experienced counsel with a track record in class actions and have zealously advocated for the Class’s interests.” (See id.)
Finally, “class certification is superior to having these claims adjudicated individually.” (Borden, 24 NY3d at 400.) The superiority factor, therefore, is present in light of there being “80 record holders and many more beneficial owners, all of whom have the same claims and interest in preventing Defendants from going dark on Bondholders.” (See NYSCEF Doc No. 46 at 22.) For these reasons, certification of the settlement class is granted.
Turning now to class counsels’ attorneys’ fees request, the court
“consider[s] the following well-established factors: the time and labor required; the difficulty of the questions involved; the skill required to handle the issues presented; the experience, ability and reputation of counsel; the proposed amount of fees; the benefit resulting to the putative class from the services; the customary fee charged for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved.” (Gordon, 148 AD3d at 165, citing Matter of Freeman, 34 NY2d 1, 9 [1974].)
“The court should also consider the stage of the litigation at which the settlement occurred.” (Id.) The overarching “principle [is] that a settlement court should have discretion to award attorney’s fees in an amount commensurate with the degree of benefit obtained by the class as a result of the litigation.” (See id. at 165.)
Taking the above listed factors into account, the court finds that the requested $440,000 fee award is warranted. Class counsel performed substantial work and obtained an extremely favorable result for the class. Absent the efficiency in which the settlement was reached, the company may have ended up paying its lawyers even more than it agreed to pay *198 class counsel. This is a great result for both the class and company. That being said, while the work described in class counsels’ submissions, the hourly rates, and the general amount of time expended appear reasonable (see NYSCEF Doc No. 52-53), it is this court’s practice to employ a deduction where, as here, the time records are recorded with block billing. (See Eastern Consol. Props., Inc. v Lynbrook Sunrise Realty LLC, 2016 NY Slip Op 32319[U], *1 [Sup Ct, NY County 2016] [collecting cases].) Nonetheless, the court will not employ a block billing discount to the $440,000 sought by class counsel because such amount already reflects a significant negative multiplier to the actual billable hours expended. Counsel explains:
“As of January 31, 2017, C & T spent 743.95 hours litigating and securing the benefits of the Settlement, reflecting a lodestar of $463,601.25. As reported in the Supplemental Affirmation of Lawrence Kolker, WHAFH sets forth that it spent a total of 197.80 hours litigating and securing the benefits of the Settlement, reflecting a lodestar of $140,785.80. Thus, as of January 31, 2017, the total lodestar for Plaintiffs’ Counsel in this Action is $604,387.05.
“The requested amount in fees and expenses is $440,000. The portion of this all-in amount that constitutes fees is approximately $404,000, reflecting a negative multiplier of 0.668. Defense counsel would have objected to any amount above $440,000 and, therefore, Plaintiff’s fee request does not exceed this amount.” (See NYSCEF Doc No. 52 at 10.)
Moreover, class counsel plausibly aver that they created millions in market value by virtue of the supplemental disclosures, further buttressing the reasonableness of a $440,000 award. (See id. at 11.) The $440,000 awarded should be split between C & T and WHAFH based on the percentage of their respective efforts. C & T billed for approximately 79% of the time (743.95/ 941.75), which corresponds to approximately 77% of the total amount billed ($463,601.25/$604,387.95). The court, therefore, finds it appropriate to award it 78% of the $440,000, which is $343,200. WHAFH should receive the remaining $96,800. Accordingly, it is ordered that plaintiff’s unopposed motion for *199 final approval of the settlement, certification of the settlement class, and for an award of $440,000 in attorneys’ fees is granted.

. References to “Doc No.” followed by a number refer to documents filed in this action on the New York State Courts Electronic Filing system.

. While defendants do not oppose plaintiff’s motion, they maintain that they have strong defenses to plaintiff’s claims and have not conceded any wrongdoing. {See NYSCEF Doc No. 47.) As discussed herein, they agreed to settle because the terms of the settlement are extremely beneficial for all parties and, among other things, will avoid the prospect of prolonged and expensive litigation.

. See NYSCEF Doc No. 46 at 9 (“By necessity, much of the relief for the Class secured by the Settlement was implemented on an expedited basis and prior to the filing of this Motion”).

. Gordon’s “some benefit” test (see id. at 159) cannot be viewed as anything other than an outright rejection of Trulia’s “plainly material” standard. (See Trulia, 129 A3d at 898 [“practitioners should expect that disclosure settlements are likely to be met with continued disfavor in the future unless the supplemental disclosures address a plainly material misrepresentation or omission”].) The disclosure suit here is worthy of being brought, the settlement provides real benefit to the class, and the way in which counsel litigated and resolved the case is praiseworthy. The remedial disclosures would pass muster under Trulia (meaning that Gordon’s lower standard is easily satisfied), a fact that further justifies the court’s attorneys’ fees award.