OPINION OF THE COURT
Shirley Werner Kornreich, J.
By order dated November 10, 2016, the court granted pre *220 liminary approval of the parties’ amended class action settlement agreement (the Settlement). (See 53 Misc 3d 1212[A], 2016 NY Slip Op 51628[U] [Sup Ct, NY County 2016], NY St Cts Elec Filing [NYSCEF] Doc No. 133 [the Preliminary Approval Decision].)[1] The parties now move for final approval of the Settlement and class certification. There are two objectors: (1) the Grünewald plaintiffs, who object on the same grounds as in their opposition to the preliminary approval;[2] and (2) Anna St. John, on behalf of the Competitive Enterprise Institute Center for Class Action Fairness, who objects on the grounds that the Settlement is purportedly a worthless disclosure-only settlement and that the $350,000 in fees requested by plaintiffs’ attorneys at Emery Celli Brinckerhoff & Abady LLP (ECBA) are excessive. The court reserved on the motion after oral argument. (See May 5, 2017 tr.) For the reasons that follow, the court grants plaintiffs’ motion in all respects except for the $1,000 service awards sought for each of the three class representatives.
The history of this action and the related action commenced by the Grünewald plaintiffs is set forth in the Preliminary Approval Decision and is not repeated here. Likewise, an extensive discussion of the Settlement’s terms may be found in the Preliminary Approval Decision.[3]
At this juncture, the parties seek final approval of the Settlement, which principally requires the Museum to change its signs to more clearly and prominently inform the public that the listed admission prices are merely suggested, and not mandatory. (Compare NYSCEF Doc No. 155 [old sign with *221 “Recommended” in much smaller font than “Admissions”], with NYSCEF Doc No. 153 at 47-53 [“Suggested Admission” and “The amount you pay is up to you” prominently displayed at top of sign and in much larger font than suggested prices, as well as information online and on kiosks].) The court does not believe a reasonable person is likely to be deceived by the new signage into thinking there is a mandatory $25 admission fee. Likewise, the court does not believe a reasonable person could compare the two signs side-by-side and conclude that the new sign is not a significant improvement over the old sign. Since the only claim being settled is a claim for injunctive relief to remedy the Museum’s allegedly deceptive admission policy and attendant signage as violative of General Business Law § 349, the outcome achieved by the Settlement is outstanding.
As discussed in the Preliminary Approval Decision, there is no merit in the Grünewald plaintiffs’ contention that additional relief is warranted. The additional relief they seek would remedy claims that are not being settled (e.g., claims for monetary damages) or claims that were dismissed (i.e., claims under the lease and the 1893 statute). (See 2016 NY Slip Op 51628[U], *11, Preliminary Approval Decision at 19 [“(T)he claim being settled is for the allegedly deceptive nature of the Museum’s admission policy. Plaintiffs’ claim that the Museum is legally prohibited from charging admission was dismissed and provides no basis to upend the proposed settlement”].) It would be unreasonable to require the parties’ settlement to account for either of these types of claims. (See 2016 NY Slip Op 51628[U], *11, Preliminary Approval Decision at 20 [“the Grünewald Plaintiffs could not have expected the Museum to agree to do things the Museum would not have had to do even if it lost in (this case)” (citation and internal quotation marks omitted)].) The Settlement sufficiently remedies claims that are actually pending. The signs, already put in place, which clearly inform the Museum’s patrons of the discretionary nature of their admission fee, are far less deceptive than the previous signs, where the word “Recommended” was in small print. This is particularly the case when taken together with the changes on the website and the kiosks.
That said, before granting final approval to a class action settlement, the court must first certify that the requisite factors militate in favor of approval and class certification. Here, the court will not separately discuss class certification because it has already done so in the Preliminary Approval Decision. *222 (See 2016 NY Slip Op 51628[U], *12, Preliminary Approval Decision at 22-23; accord Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 399-400 [2014].) Simply put, this action is a textbook example of a case that is most amenable to resolution on a class-wide basis.
It is black-letter law that a court in granting final approval to class action settlement must weigh the following factors: “the likelihood of success, the extent of support from the parties, the judgment of counsel, the presence of bargaining in good faith, and the nature of the issues of law and fact.” (Matter of Colt Indus. Shareholder Litig., 155 AD2d 154, 160 [1st Dept 1990], affd as mod 77 NY2d 185 [1991]; see Gordon v Verizon Communications, Inc., 148 AD3d 146, 156 [1st Dept 2017] [reaffirming Colt factors and adding two more, discussed below].)
The likelihood of plaintiffs prevailing in this case was highly uncertain. There is little doubt that a determination of whether the Museum’s old signage was deceptive under General Business Law § 349 would have been a question for the finder of fact. It is axiomatic that all trials involve substantial risk and uncertainty. To hedge that risk and to avoid the extreme expense of electronic discovery, depositions, expert reports, and motion practice over class certification and summary judgment, as well as appeals of apparent legal questions of first impression, the Museum agreed to settle by offering to change its signage and admission policy in a manner that makes the voluntary nature of its patrons’ contributions far more apparent. Indeed, if plaintiffs were to prevail on liability at trial, the court would have had to issue an injunction mandating new signage. The agreed-upon signage is not dissimilar to what the court would have ordered.
As discussed in the Preliminary Approval Decision, the court, much to the parties’ chagrin, rejected the proposed signage in their original settlement agreement, and only agreed to grant preliminary approval after the signage was changed to its current form. Ergo, the court believes the new signage clearly and accurately informs the public of the Museum’s admission policy. Given the court’s belief that the signage is substantially similar to what plaintiffs would have obtained had they prevailed on the merits, the Settlement’s result is a very good outcome. Hence, the court finds that the first and fifth approval factors, the likelihood of success and the nature of the issues of law and fact, weigh heavily in favor of approval.
*223 The next three factors—the extent of support from the parties, the judgment of counsel, and the presence of bargaining in good faith—also militate strongly in favor of approval. As explained in the Preliminary Approval Decision, there is no reason to doubt that the Settlement is the product of extensive arm’s length negotiations between two New York law firms with excellent reputations. The court cannot overstate the thoughtfulness demonstrated by counsel to the unique legal issues in the case and their diligence in the lengthy, complex and protracted settlement process. Moreover, the court, as noted, had some involvement in the process that resulted in the final iteration of the signage, going so far as to reject the original version that had been the product of months of negotiations. From a process standpoint, the Settlement unquestionably meets the requisite standards for approval.
That said, in Gordon, the First Department added two new factors that must be considered when evaluating “proposed nonmonetary settlements of class action suits.” (Gordon, 148 AD3d at 158.) The first is “whether the proposed settlement is in the best interests of the putative settlement class as a whole.” (Id.) This factor clearly weighs in favor of approval. The settlement class—people that paid to enter the Museum or purchased a membership since March 5, 2007—are getting the very injunctive relief they sought at the outset of the case: a clear, non-deceptive admissions policy. To the extent the settlement class includes individuals who wish to serve as class representatives in another action seeking damages, the Settlement does not foreclose that possibility. Only the three named class representatives are releasing their claims for monetary damages. Consequently, the class is getting a superior admissions policy immediately without giving up the possibility of a monetary damages recovery. There is no downside here.
In that regard, the fact that the Museum also is obtaining prompt certainty over its admissions policy is why the final Gordon factor—“whether the proposed settlement is in the best interest of the corporation”—is satisfied. (See id. at 161.) The Museum is being relieved of the possibility of its old admissions policy giving rise to future liability (and attendant public relations concerns) for being deceptive by having the court certify now, instead of years down the line, that its new signage is not deceptive. The court would not have approved the new signage if it thought that a reasonable patron would be deceived by it. There is significant benefit to the Museum in knowing that it can put this legal issue to bed.
*224 Turning now to the objections, the court finds them to be without merit. With respect to the Grünewald plaintiffs, as noted, they did not proffer any objections other than those considered and rejected by the court in the Preliminary Approval Decision. To the extent the court indicated that it would, of course, reserve final decision on the sufficiency of the new signage until the final approval hearing, the court’s discussion herein should make evident that it has done so and finds the new signage to be a significant improvement and worthy of approval.
The court also rejects the Grünewald plaintiffs’ baseless contention that the parties’ counsel acted collusively and not in the best interest of their clients. This contention is inflammatory and proffered without any evidentiary support. Indeed, the notion that ECBA’s profit motive drove its settlement incentive is absurd. The $350,000 awarded to ECBA, addressed further below, is not particularly generous given the magnitude of the issues raised by this case and the hours spent on it. Had this case been litigated successfully on the merits, or even settled a few years down the road after further litigation, the amount awarded would likely have been much higher given all the extra work that would have been done. If plaintiffs’ counsel was seeking to maximize its profit from this case, this was not the way to do it. They, therefore, are the antithesis of counsel who bring strike suits seeking to quickly profit on worthless disclosure-only settlements. In fact, a review of the billing records makes clear that given the amount of resources devoted by counsel, this is not the most profitable case for it. The amount and quality of work performed, weighed against the exceptional outcome achieved, easily justifies the fee award. Notably, given the two sides of the caption in this case—the Museum and its patrons, i.e., the public—it is laudable that counsel was willing to perform at such a high level for what is below its customary pay. Counsel deserves every cent; the public more than got its money’s worth.
To the extent St. John objects on the ground that the Settlement is supposedly the sort of worthless disclosure-only settlement of a merger tax suit addressed by this court in City Trading Fund v Nye (46 Misc 3d 1206[A], 2015 NY Slip Op 50008[U] [Sup Ct, NY County 2015], revd 144 AD3d 595 [1st Dept 2016]) and by the Delaware Court of Chancery in In re Trulia, Inc. Stockholder Litig. (129 A3d 884 [Del Ch 2016]), that argument is meritless. The First Department’s decision in Gordon *225 completely undercuts her argument. Regardless, this case is not a merger strike suit; it bears absolutely no resemblance to a lawsuit about inadequate pre-merger disclosure. Rather, this case concerns whether the Museum’s patrons were deceived by the Museum’s admission policy. The instant settlement, which remediates any possible deception, provides a real benefit to the public. St. John’s suggestion that the benefits of the new signage are as illusory as a gratuitous “tell me more” corporate disclosure (see In re Saba Software, Inc. Stockholder Litig., 2017 WL 1201108, *9, 2017 Del Ch LEXIS 52, *28 [Apr. 11, 2017, CA No. 10697-VCS]) is specious. This is a real value-added settlement; it is not horse-hockey. And regardless of the outcome, the case is certainly not frivolous. While the Museum successfully moved to dismiss certain of plaintiffs’ claims, notably, it did not move to dismiss plaintiffs’ claim under General Business Law § 349. Although the claim would have been a difficult one to try and prove, not even the Museum believed the claim was frivolous. That St. John thinks otherwise is not compelling.
Finally, the court admonishes the Grünewald plaintiffs and their counsel for continually attempting to use this case as a means of collaterally challenging aspects of the Museum’s policies with which they disagree. To be clear—this is not a case about the wisdom of the Museum’s current admission policy, or any alternative policy that may currently be contemplated. Even if the Museum and the City were to decide to charge non-New York residents a higher mandatory admission fee (a proposal on which this court has no control), that fact has no bearing on whether the Settlement ought to be approved. As discussed, the claim being settled is for the Museum’s past allegedly deceptive admission policy, a grievance the Settlement remediates. This court’s gatekeeping role over class action settlements should not be used as a cudgel to countenance the Grünewald plaintiffs’ complaints about the Museum’s future policy plans. Simply put, matters beyond the scope of the alleged deception are not part of the court’s calculus.
Similarly, as discussed in the Preliminary Approval Decision, the Grünewald plaintiffs have used this case as a soapbox to express their myriad grievances about how the Museum is run, such as their baseless accusations of corporate waste and an infirm demand to create a new Central Park entrance. Even now, they continue to conflate issues relevant to the claims being settled and those that have no bearing on this action. For *226 instance, at oral argument, counsel for the Grünewald plaintiffs again protested the Museum even charging a penny for admission based on the 1893 statute, despite this court (Saska v Metropolitan Museum of Art, 42 Misc 3d 548 [Sup Ct, NY County 2013]) and the Appellate Division (Grunewald v Metropolitan Museum of Art, 125 AD3d 438 [1st Dept 2015]) ruling that his clients have no standing to do so. They now contend that this court should not grant its imprimatur to a settlement that violates that appropriations statute, even if they cannot directly seek redress for such violation. But in making that argument, the Grünewald plaintiffs are not merely missing the forest for the trees, but have lost sight of the trees altogether. The Museum’s only alleged illegality currently at issue is the alleged deception in its admissions policy and signage. Even if the Museum is actually breaking the law by requiring that all patrons pay some admission fee (something the court is not ruling on), that fact would not give rise to liability in this case. Rather, the basis for the Museum’s potential liability is that its patrons were allegedly deceived into paying $25 to enter when, in fact, they could (if they wanted) pay much less—as little as a penny.
The only fact that should be gleaned from the court’s approval of the Settlement is that the new signage and admissions policy do not deceive the public about how much money is required to be paid to enter the Museum. The court is approving the Settlement because the Settlement substantially fulfills the goals of the remaining claims asserted in this case. All other legality issues or future policy changes are beyond the scope of this decision and, indeed, this case. Importantly, the Settlement retains this court’s jurisdiction until August 26, 2022 to ensure compliance with its consent decree. (See NYSCEF Doc No. 166.) The bottom line is that the new policy and signage is substantially better than the old, and, as a result, the Settlement warrants final approval.
With respect to class counsels’ attorneys’ fees request, where, as here, an objector challenges “the award of attorneys’ fees which has been designated in an agreement of settlement,” “the matter should be ‘addressed to the discretion of the Court in the exercise of its equitable powers.’ ” (Gordon, 148 AD3d at 164-165, quoting Seinfeld v Robinson, 246 AD2d 291, 293 [1st Dept 1998].)
“In making that determination, the motion court should consider the following well-established fac *227 tors: the time and labor required; the difficulty of the questions involved; the skill required to handle the issues presented; the experience, ability and reputation of counsel; the proposed amount of fees; the benefit resulting to the putative class from the services; the customary fee charged for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved.” (Gordon, 148 AD3d at 165, citing Matter of Freeman, 34 NY2d 1, 9 [1974].)
“The court should also consider the stage of the litigation at which the settlement occurred.” (Id. ) The overarching “principle [is] that a settlement court should have discretion to award attorney’s fees in an amount commensurate with the degree of benefit obtained by the class as a result of the litigation.” (Id.)
For the reasons discussed earlier, applying these factors here warrants the requested $350,000 in counsel fees. Plaintiffs’ counsel “have done substantial work identifying, investigating, prosecuting, and settling” the case, and they “have substantial experience prosecuting and settling class actions, and the lawyers assigned to this matter are well-versed in class action practice and are well-qualified to represent the class.” (See NYSCEF Doc No. 165 at 48; see also 2016 NY Slip Op 51628[U], *12, Preliminary Approval Decision at 23 [finding that ECBA is “particularly well suited to represent the class, not only due to that firm’s reputation, but also because, in this court’s experience with their counsel in this action, the quality of their representation has been exemplary”].) To the extent St. John suggests that disclosure-only settlements never warrant fee awards, she is wrong. (See Gordon, 148 AD3d at 165-166.) While the value of the disclosure-only settlement should dictate the amount of the award, here, the value is considerable.[4]
*228 A review of ECBA’s billing records confirms that a $350,000 award is eminently reasonable. (See NYSCEF Doc No. 163.) ECBA’s attorneys billed for more than 1,000 hours of work at rates that are quite reasonable for New York City. (See id. at 73-74.) Lead counsel, Andrew G. Celli, billed at a rate of $625 per hour, which is below that of other litigators of his caliber. (See id. at 73.) In total, ECBA’s bill comes to $533,342.50. (See id. at 74.) After factoring in nearly $22,000 in costs (see id.), the $350,000 requested is approximately $200,000 less than the amount billed. The $350,000 requested by ECBA, therefore, is approved.[5]
Finally, while the court would be amenable to granting the three class representatives the modest $1,000 awards they request given the apparent value of their contributions, as addressed in the Preliminary Approval Decision, the court is constrained by the plain meaning of CPLR 909 not to do so:
“[T]he court rejects the Saska Plaintiffs’ contention . . . that the current version of CPLR 909 now expressly permits incentive awards for class representatives. CPLR 909, which was amended after the Court of Appeals’ decision in Flemming v Barnwell Nursing Home & Health Facilities, Inc., 15 NY3d 375 (2010), now provides:
“If a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys’ fees to the representatives of the class and/or to any other person that the court finds has acted to benefit the class based on the reasonable value of legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class, (emphasis added).
“Hence, while CPLR 909 provides for representatives and objectors to recover attorneys’ fees, it does not provide for a separate cash award. While some judges in this court have approved incentive awards [see, e.g., Chowdhury v GK Grill LLC, 2015 WL 8488817, at *3 (Sup Ct, NY County 2015); Lopez v *229 The Dinex Group, LLC, 2015 WL 5882842, at *3 (Sup Ct, NY County 2015)], this court has reservations about doing so. . . .
“The issue is not whether [the three class representatives] deserve to be compensated or whether this court believes the availability of such awards are good public policy, but only whether such awards are permitted by statute.” (2016 NY Slip Op 51628 [U], *11 n 16, Preliminary Approval Decision at 20-21 n 16.)
Plaintiffs’ arguments to the contrary are unconvincing. They aver that “the 2011 amendment to CPLR 909 was not intended merely to expand the recoverability of attorneys’ fees to objectors, but aimed generally to increase the discretion of courts to award fees in a class action settlement.” (NYSCEF Doc No. 165 at 51.) But this intent is not reflected in the language of CPLR 909, which speaks only of “attorneys’ fees.” (See People v Finnegan, 85 NY2d 53, 58 [1995] [“The governing rule of statutory construction is that courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory ‘language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of (the) words’ ” (emphasis added)], quoting People ex rel. Harris v Sullivan, 74 NY2d 305, 309 [1989].) The legislature, which was presumably aware of the practice of issuing service awards in federal court, could have clearly authorized them if it intended to do so, instead of merely permitting recovery of attorneys’ fees. Indeed, since CPLR 909 was apparently amended in response to the Court of Appeals’ decision in Flemming, it makes sense that its current version only mentions attorneys’ fees, as that is all the Court of Appeals’ decision addressed. (See Flemming, 15 NY3d at 378 [“On this appeal, we are asked to consider whether New York law permits an award of counsel fees and expenses to an objectant in a class action. We hold that it does not” (emphasis added)].) Even Judge Smith’s dissent in Flemming was only concerned with attorneys’ fees. (See id. at 380 [“the majority today holds that a class member’s lawyer who opposes the fee application, even if he does so successfully, must work for free or be paid entirely from the resources of the person who hired him”].) Since Flemming did not actually address service awards, there is no reason to think that the amendment to CPLR 909 was meant to do so, given that it only mentions an award of attorneys’ fees.
*230 This conclusion is supported by the CPLR commentary:
“CPLR 909 [was amended] to overrule Flemming. Henceforth, in a class action in which a judgment is awarded to the class, the court may award attorneys’ fees to the class representative ‘and/or to any other person that the court finds has acted to benefit the class.’ The amendment will serve as a significant incentive for the policing of settlements by those whose interests in the matter may be too slight to make it worth their while to incur the legal expenses associated with the filing of objections.” (Vincent C. Alexander, 2Ó11 Supp Practice Commentaries, McKinney’s Cons Laws of NY, CPLR 909 [emphasis added]; see also Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, CPLR 909 [“CPLR 909 gives the court discretion to award attorney’s fees to class representatives for the prosecution of a successful action” (emphasis added)].)
Nothing in the practice commentaries or the case law suggests that a service award that does not help the class representative pay his counsel is permitted by CPLR 909. Here, the three class representatives do not purport to seek service awards to reimburse them for legal fees that are owed to their counsel (ECBA, as noted, is being compensated by the $350,000 award issued herein).
To be sure, as plaintiffs correctly observe, some New York state trial courts, such as those cited in the Preliminary Approval Decision, have issued service awards. However, their appearance on Westlaw as apparent judicial opinions is somewhat misleading. A review of the version of the cited orders filed on NYSCEF makes clear that they are form orders prepared by counsel that were signed by the assigned justice. (See e.g. Chowdhury v GK Grill LLC, index No. 153996/2014, NYSCEF Doc No. 129 [Sup Ct, NY County, Dec. 7, 2015], available at 2015 WL 8488817.) None of these cases represent reasoned decisions opining on whether the current version of CPLR 909 permits service awards. Where case law is cited in these orders, the cases are federal district court cases, which are subject to the federal rules allowing service awards, and not CPLR 909. (See e.g. Lopez v Dinex Group, LLC, index No. 155706/2014, NYSCEF Doc No. 84 at 6-8 [Sup Ct, NY County, Oct. 6, 2015], available at 2015 WL 5882842.) The same is true of the other cases cited in plaintiffs’ brief, which also are form orders, not actual judicial opinions, notwithstanding their West- *231 law citations. (See e.g. Fernandez v Legends Hospitality, LLC, index No. 152208/2014, NYSCEF Doc No. 41 [Sup Ct, NY County, June 22, 2015], available at 2015 WL 3932897.) In fact, the form orders in these cases appear to be virtually identical. Much of the language is copied and pasted with identical case citations. (Compare id., with Mancia v HSBC Securities [USA] Inc., 2016 WL 833232, 2016 NY Misc LEXIS 496 [Sup Ct, Kings County, Feb. 19, 2016, No. 9400/2015].) For these reasons, the court does not consider these orders to be persuasive authority on what, at best, appears to be an open question of law.
Notably, plaintiffs do not cite a single New York appellate case interpreting CPLR 909 to permit service awards. (See Flemming v Barnwell Nursing Home & Health Facilities, Inc., 56 AD3d 162, 166 [3d Dept 2008] [“New York law does not authorize incentive awards for named plaintiffs in class actions”], affd on other grounds 15 NY3d 375 [2010].) To the contrary, both before and after the Court of Appeals’ decision in Flem-ming, the Appellate Divisions, like the statute itself and the CPLR commentary, have only viewed CPLR 909 as a means of recovering attorneys’ fees. (See Louisiana Mun. Employees’ Retirement Sys. v Cablevision Sys. Corp., 74 AD3d 1291, 1293 [2d Dept 2010] [“CPLR 909 authorizes the award of an attorney’s fee” (emphasis added)]; see also Ital Assoc. v Axon, 150 AD3d 474, 474 [1st Dept 2017] [noting that common fund doctrine concerns attorneys’ fees].)
Again, this court is not averse to the notion of service awards and believes in their wisdom. (See NYSCEF Doc No. 165 [collecting cases]; see also In re Colgate-Palmolive Co. ERISA Litig., 36 F Supp 3d 344, 354 [SD NY 2014].)[6] However, the court does not believe it can make such an award under the State’s current legislation.[7] While the legislature should seriously consider amending CPLR 909 to permit service awards to class repre *232 sentatives, that, for now, is merely aspirational. Since the statute, as it currently reads, only authorizes attorneys’ fees, the court must deny the class representatives a service award. Nonetheless, the court greatly thanks the named plaintiffs for their service. Their contributions resulted in the Museum improving the way it discloses its admission policy, thereby increasing access to the cultural treasure that is the Museum.
Accordingly, it is ordered that the parties’ motion for final approval of the Settlement is granted in all respects except for the requested class representative service awards, the two objections are overruled, and the parties are directed to submit (by e-filing and fax) a proposed order and judgment conforming with this decision within two weeks of the entry of this order on NYSCEF.

. References to “Doc No.” followed by a number refer to documents filed in this action on the New York State Courts Electronic Filing system. Capitalized terms not defined herein have the same meaning as in the Preliminary Approval Decision.

. The Grünewald plaintiffs did not submit new objections. Rather, their counsel submitted an affirmation that attaches copies of their papers from the prior preliminary approval motion. (See NYSCEF Doc No. 140.) Hence, their submission does not address the court’s rejection of those objections in the Preliminary Approval Decision.

. In short, the Settlement
“covers nine topics: (1) the class definition; (2) the disclosure of the Museum’s policy by the Museum; (3) the disclosure of the Museum’s policy by third parties who contract with the Museum to sell admission tickets to the Museum as part of ‘packages’ and tours; (4) future changes in suggested admission amounts; (5) staff training and evaluation; (6) future changes in the Museum’s admission policy; (7) the duration of the agreement; (8) the release of claims; and (9) attorneys’ fees and service awards.” (NYSCEF Doc No. 165 at 17.)

. Plaintiffs note:
“Even if the economic value of injunctive relief were dispositive, St. John’s objection to the requested fee award is premised on her meritless assertion that the settlement fails to achieve meaningful relief for the class. But even accepting St. John’s unexplained and arbitrary assertion that ‘the class benefit would have to be valued at more than $1 million’ to justify the fee award sought, that burden would be handily satisfied. Assuming that visits to the Museum continue at the rate of 6.7 million per year, . . . well over 40 million individuals will visit the Museum during the term of the consent decree. Accordingly, if the settlement results in the average visitor saving three cents on admission fees, the economic value of the consent decree could *228 conservatively be estimated at $1.2 million.” (NYSCEF Doc No. 165 at 49 [citation omitted].)

. It should be noted that the objectors do not point to anything in the billing records indicating that the amount of time billed was excessive. And even assuming this is the case with certain tasks, the $200,000 discount more than compensates for any inefficiencies.

. It bears mentioning that the federal courts caution that service awards must be closely scrutinized to ensure they really are warranted, and should be rejected where the proposed service award would unduly decrease the recovery of other class members. (See Seijas v Republic of Argentina, 2017 WL 1511352, *14, 2017 US Dist LEXIS 64398, *51 [SD NY, Apr. 27, 2017, 04-cv-400 (TPG); 04-cv-401 (TPG); 04-cv-506 (TPG); 04-cv-936 (TPG); 04-cv-937 (TPG); 04-cv-1085 (TPG); 04-cv-2117 (TPG); 04-cv-2118 (TPG); 06-cv-15297 (TPG)] [“While Brecher is to be recognized for his efforts, he did not incur any additional risk in pursuing this litigation”].) This concern is not at issue here.

. While our state courts have long looked to federal courts for guidance in the area of class actions (see City of New York v Maul, 14 NY3d 499, 510 [2010]), that, unfortunately, is not always the case. (See Vasquez v National *232 Sec. Corp., 48 Misc 3d 597 [Sup Ct, NY County 2015], affd 139 AD3d 503 [1st Dept 2016] [refusing to abrogate precedent requiring pre-class certification dismissal notice requirement after analogous federal rule change].) Here, while adopting the wisdom of the federal courts would certainly be beneficial to our state class action public policy, deference to such wisdom must give way to the bedrock legal principal that a court may not simply ignore the plain meaning of a statute merely because it does not like the public policy implications of such meaning.