[933 NYS2d 3]

RSB Bedford Associates, LLC, Respondent, v Ricky's Williamsburg, Inc., Doing Business as Ricky's NYC, et al., Appellants.

First Department, November 10, 2011

### APPEARANCES OF COUNSEL

*Santamarina & Associates*, New York City (*Gil Santamarina* of counsel), for appellants.

*Gallagher, Harnett & Lagalante LLP*, New York City (*Brian K. Gallagher* of counsel), for respondent.

### OPINION OF THE COURT

MOSKOWITZ, J.

A commercial tenant and its guarantor parent corporation appeal from five orders: three substantive determinations and two discovery rulings. Because plaintiff's willingness and ability to close on the property associated with the lease at issue is irrelevant, we affirm.

Plaintiff RSB Bedford planned to buy a building on Bedford Avenue in Brooklyn (the property). However, plaintiff was unwilling to acquire the property without a committed commercial tenant. Accordingly, in anticipation of entering into a commercial lease, plaintiff entered into a letter agreement (the side letter) on August 12, 2008 with defendant Ricky's Williamsburg (Ricky's or defendant). In the side letter, Ricky's specifically acknowledged that "[l]andlord does neither currently own the Property nor have the Property under contract. Landlord intends to execute a contract (the 'Contract') concurrently with or shortly after executing the Lease. Landlord is unwilling to execute the Contract for the acquisition of the Property until the Lease has been fully signed."

Thus, defendant understood that plaintiff did not currently own the property and would not acquire the property until plaintiff had obtained a tenant for it.

In the side letter, defendant also acknowledged that plaintiff had until September 14, 2009 to close on the property. If title did not close by that date, defendant would have the right to terminate the lease unilaterally (the walkaway clause). Defendant also had the right to terminate if plaintiff did not sign an agreement to acquire the property by September 15, 2008 or if, after acquiring title, plaintiff failed to deliver the property in the condition the lease required.

As the side letter had contemplated, on August 18, 2008, the parties entered into a lease for space at the property. Among other things, the lease provided that defendant promised to take possession of a particular retail storefront on the "Commencement Date." The commencement date remained open in the lease for the obvious reason that plaintiff had not yet purchased the property. The lease specifically provided that if delivery of possession had not occurred by March 1, 2010, defendant had the right to cancel the lease with no further obligation to plaintiff. The lease also contained a standard merger clause prohibiting changes that were not in writing.

On August 18, 2008, plaintiff also entered into a guaranty agreement with defendant's parent company, defendant Ricky's Holdings, Inc. (Holdings). Under the guaranty, Holdings guaranteed all aspects of defendant's performance and obligations under the lease and side letter.

On August 27, 2008, plaintiff signed an agreement to purchase the property (the acquisition agreement).

On June 15, 2009, counsel for defendant sent a letter "to formally notify [plaintiff] that Ricky's will not take possession of the premises" (the rejection letter). Although defendant had acknowledged in the side letter that plaintiff had not yet acquired the property and that plaintiff wanted a signed lease before entering into the acquisition agreement, defendant nevertheless accused plaintiff of material misrepresentation because "this firm has learned that you do not own the Premises in fee simple as you represented in the purported lease." Ignoring the merger clause in the lease, the rejection letter also accused plaintiff of having failed "to deliver the Premises in accordance with your subsequent oral modifications to the alleged lease." Even though the dates whereby defendant could walk away from the deal had not occurred, the rejection letter stated, "[A]s a result of your repeated delays and general inability to meet with the terms of the alleged lease, my client has suffered material damages." The rejection letter continued that "[a]s a result

of your seemingly incompetent and unethical behavior, my client has no desire to enter into any business arrangement with you or your corporate vehicles." The rejection letter included a release in favor of defendants and stated that plaintiff should agree to rescind the agreements. The rejection letter threatened legal action if plaintiff did not comply.

In July 2009, plaintiff commenced this action that included a claim for anticipatory breach of the lease and side letter. Plaintiff sought, inter alia, damages arising from its inability to purchase the building, as well as lost rent and other unspecified damages totaling $20 million.

Defendants filed their answer and counterclaim on August 13, 2009. Accompanying the answer was a request for production of documents. On August 28, 2009, plaintiff moved for partial summary judgment as to defendant Ricky's liability and to dismiss the counterclaims. Ricky's opposed and cross-moved to dismiss the complaint.

Supreme Court heard oral argument on March 11, 2010. Defendants did not, either in their brief or during oral argument, argue that plaintiff had to show it was ready, willing and able to perform in order to recover.

On April 12, 2010, the motion court granted partial summary judgment as to liability against both defendants (2010 NY Slip Op 33750[U]). The court found the rejection letter to be an unequivocal statement of intent to breach the agreement. The court also granted plaintiff's request for attorney's fees and costs against Holdings only and referred the issues of the amount of damages, attorney's fees and costs to a special referee to hear and report with recommendations. Defendants have appealed from this order to the extent it granted plaintiff's motion for partial summary judgment.

Defendants moved to reargue. Plaintiff cross-moved to reargue that part of the decision that denied plaintiff's motions for attorney's fees and costs against Ricky's. On June 9, 2010, the court denied defendants' motion for reargument, but granted plaintiff's, and accordingly also sent the issues of attorney's fees and costs relating to Ricky's to a special referee (2010 NY Slip Op 33749[U]). Defendants also appeal from this order.

The hearing before the special referee was to take place on June 17, 2010. However, defendants moved by order to show cause to vacate or stay that hearing. Defendants argued that

the lease, the letter agreement and the guaranty expressly precluded recovery for compensatory or consequential damages and these were what plaintiff was seeking. Supreme Court denied this motion on June 17, 2010 without explanation. Defendants appealed.

■ Defendants served discovery demands on plaintiff and the nonparty seller of the property at issue, and asked the court for leave to conduct discovery and to set a discovery schedule. On August 5, 2010, the court provided for limited discovery, including that: (1) the parties must provide all documents they were to use at the hearing, (2) "plaintiff must provide all documents concerning the $400,000 deposit and return of that deposit" and (3) plaintiff had to provide all documents that defendants had requested a year earlier that related to damages. The court did not provide for any nonparty discovery. The court then restored the case to the special referee calendar. Defendants have taken an appeal from this order as well. However, as this order is apparently not from a motion on notice, it is not appealable. The proper course would have been for defendants to move to vacate and appeal from the denial of vacatur.

Undeterred, defendants moved to compel discovery from plaintiff and the nonparty seller, seeking documents related to the sale of the property. Plaintiff moved to quash and for a protective order. In a separate motion, defendants moved for penalties and, in yet another motion, plaintiff moved for sanctions. On November 1, 2010, Supreme Court consolidated all of these motions for disposition and (1) denied defendants' motion to compel discovery from the nonparty seller because, inter alia, the information defendants sought was relevant to the issue of liability rather than damages; (2) granted that part of plaintiff's motion for a protective order preventing Ricky's from issuing any additional discovery notices or requests of any kind without leave of court; (3) granted that part of plaintiff's motion for sanctions prohibiting defendants from presenting any further arguments or evidence on the issue of liability and (4) denied the remainder of plaintiff's motion seeking other sanctions (2010 NY Slip Op 33748[U]).

As part of their motion to compel, defendants sought an order to strike portions of plaintiff's complaint and resolve certain issues in defendants' favor. The basis for seeking this relief was an argument that defendants made for the first time, namely that plaintiff had failed to produce documents "evidencing its being ready, willing and able to purchase the Property on the

date of Ricky's breach in June of 2009" (*id.* at \*2). Defendants argued that a party seeking damages for anticipatory breach of contract must show that it was in a position to perform at the time of the repudiation in order to recover damages. In the November 1, 2010 order, the motion court held that "the information sought goes not to the question of damages, but rather, to liability" (*id.*). As the court had already determined the issue of liability, the court denied defendants' motion to compel or strike portions of plaintiff's complaint. The court also prohibited defendants from "making any additional arguments, or presenting any additional evidence, that is offered for the purpose of refuting the determination of their liability on the Complaint" (*id.* at \*3). Defendants appeal from this order as well.

Discussion:

Defendants maintain that the motion court erred because it did not allow an inquiry into plaintiff's being "ready willing and able" to close on the property. Defendants argue that this inquiry is relevant to the damages that plaintiff could recover for anticipatory breach. As discussed, the motion court denied defendants' motion to compel certain discovery on the grounds that the "ready, willing and able standard" was relevant only to liability. Plaintiff, relying on *American List Corp. v U.S. News and World Report* (75 NY2d 38 [1989]), argues that the "ready, willing and able" standard is not material to either liability or damages for anticipatory breach.

However, we do not need to reach the issue of when and whether the court should have allowed an inquiry into plaintiff's ability to close because, under the contracts, plaintiff's ability to close is irrelevant. The parties planned in the contracts for the contingency that plaintiff might not be ready, willing and able to acquire the property. Under the side letter, Ricky's expressly agreed that plaintiff could have until September 14, 2009 to close on the property. The side letter states defendant could unilaterally terminate the lease on that date if the closing had not taken place. Instead of waiting until September 14, 2009, Ricky's counsel sent a letter in June 2009 that was unequivocal in its expression that Ricky's was terminating the agreement to lease the premises. Thus, Ricky's breached the schedule to which the parties had agreed (*see 131 Heartland Blvd. Corp. v C.J. Jon Corp.*, 82 AD3d 1188, 1189-1190 [2011] ["defendant's cancellation of the contract when the deadline for obtaining the lease modification agreement had not yet passed, constituted a wrongful repudiation of the contract"]).

Nor is the issue of plaintiff being ready, willing and able to close relevant to damages. Ricky's signed an agreement with a walkaway clause providing that the termination date was September 14, 2009. It could have negotiated for an earlier date. It did not do so. Accordingly, by walking away prior to September 14, 2009, Ricky's breached the contractual arrangement it made with plaintiff and is liable for damages circumscribed by whatever contractual limits may apply. However, the propriety of the damages Supreme Court might award, if any, is not before us at this time.

■ There is another reason the ready, willing and able requirement is irrelevant. A party cannot prevent the fulfillment of a contractual condition and then argue failure of that condition as a defense to a claim that it breached the contract (*see Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 270 [1995] ["failure of the condition cannot be utilized as a defense where, as here, the party resisting the contractual obligation has affirmatively acted to obviate its fulfillment"]; *Sunshine Steak, Salad & Seafood v W. I. M. Realty*, 135 AD2d 891, 892 [1987]). Here, the side letter that defendant signed made clear that plaintiff could not close without the lease. By pulling out of the lease, Ricky's frustrated the ability of plaintiff to close.

■ Finally, there is nothing in the lease creating an obligation running from plaintiff to Ricky's that required plaintiff to close. Any obligation plaintiff had to be ready, willing and able to close would run to the seller under the acquisition agreement. Defendant is presumably not a party to that agreement (*cf. In re Bankers Trust Co.*, 450 F3d 121, 128 [2d Cir 2006], citing *Amies v Wesnofske*, 255 NY 156, 163 [1931]).* Defendants also argue that Ricky's is not liable for attorney's fees under the lease because the lease never went into effect. This argument suffers from the same infirmity as defendants' argument concerning their general liability. Namely, Ricky's breached the agreement by failing to wait until September 14, 2009 to terminate the lease, and plaintiff is entitled to the attorney's fees as the contract provides.

Defendants claim they cannot be liable for consequential damages in the form of lost profits or an acceleration of rent under the lease (compensatory damages) because the lease and the

---

* Even if plaintiff's being "ready, willing and able" were relevant to liability, defendants waived the argument by failing to raise it in opposition to the summary judgment motion.

side letter bar this sort of liability. However, the limitation on damages these documents may contain is not an issue relating to liability, but rather goes to the proper calculation of damages. As noted, this issue is not before us.

Defendants also claim that it was error for the motion court to find that Ricky's breach triggered Holdings' obligations under the guaranty. Holdings guaranteed

> "prompt payment when due . . . [and] all *reasonable attorneys' fees*, costs, and expenses of collection incurred by Landlord in enforcing its rights and remedies under the Lease, and together with the full and complete discharge and performance of each and every . . . term, covenant, obligation or warranty contained in the Lease *or any other document executed in connection with the Lease by the Tenant*" (emphasis added).

Because the guaranty covers obligations in "any other document executed in connection with the Lease," it covers the side letter. Defendants breached the lease and the side letter with their June 2009 letter. Thus, the guaranty clearly applies. Defendants also challenge the court's ruling that Holdings is liable for attorney's fees under the guaranty. However, Holdings also guaranteed "reasonable attorneys' fees" that plaintiff incurred in "enforcing its rights." Thus, the argument that Holdings is not liable for attorney's fees lacks any basis.

In a similar vein, defendants challenge the motion court's ruling on reargument that awarded plaintiff its costs and attorney's fees against Ricky's. However, rider 16.01 (iii) of the lease provides for defendants to pay plaintiff's attorney's fees in connection with, inter alia, "any breach by Tenant of any of the terms and/or provisions of this Lease." Thus, the plain language of this subsection imposes liability on both defendants for legal fees should Ricky's breach the lease. As noted, Ricky's did breach the lease, albeit anticipatorily. Accordingly, Ricky's is liable for attorney's fees.

Finally, defendants appeal from the denial of their motion to stay or cancel the damages hearing. However, this motion really was a thinly-veiled attempt to once again reargue the summary judgment motion. This time, defendants argued that plaintiff lacks standing to sue for lost rent because plaintiff never became

the landlord of the property. However, this argument and the authority defendants cite are completely inapposite to this claim for breach of contract. We find the remainder of defendants' arguments unavailing.

Accordingly, the order of the Supreme Court, New York County (Bernard J. Fried, J.), entered April 14, 2010, that, inter alia, granted plaintiff's motion for partial summary judgment as to liability, should be affirmed, with costs; the order of the same court and Justice, entered June 23, 2010, that, inter alia, granted plaintiff's cross motion to reargue and found that defendant Ricky's Williamsburg, Inc. doing business as Ricky's NYC was also liable for attorney's fees, should be affirmed, with costs; the order of the same court and Justice, entered on or about June 17, 2010, that denied defendants' motion to stay or cancel the damages trial, should be affirmed, with costs; and the order of the same court and Justice, entered November 4, 2010, that, inter alia, denied defendants' motion to compel compliance with a subpoena served on a nonparty and granted plaintiff's cross motion to quash, should be affirmed, with costs. The appeal from the order, same court and Justice, entered August 12, 2010, that, inter alia, ordered certain discovery and ordered discovery completed by August 31, 2010, should be dismissed, without costs, as taken from a nonappealable order.

Tom, J.P., Saxe, Catterson and Moskowitz, JJ., concur.

Orders, Supreme Court, New York County, entered April 14, 2010, June 17, 2010, June 23, 2010 and November 4, 2010, affirmed, with costs. Appeal from order, same court and Justice, entered August 12, 2010, dismissed, without costs, as taken from a nonappealable order.