Needham & Co., LLC v UpHealth Holdings, Inc. (2024 NY Slip Op 02599)

Needham & Co., LLC v UpHealth Holdings, Inc.

2024 NY Slip Op 02599

Decided on May 09, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 09, 2024

Before: Manzanet-Daniels, J.P., Singh, Kapnick, Gesmer, Rodriguez, JJ. 

Index No. 655331/21 Appeal No. 2253 Case No. 2023-06591 

[*1]Needham & Company, LLC, Plaintiff-Respondent,
v
UpHealth Holdings, Inc., et al., Defendants-Appellants.

Morrison & Foerster LLP, New York (Joseph R. Palmore of counsel), for appellants.
Pillsbury Winthrop Shaw Pittman LLP, New York (Edward Flanders of counsel), for respondent.

Judgment, Supreme Court, New York County (Margaret Chan, J.), entered September 27, 2023, in plaintiff's favor against defendants in the amount of $37,829,550.55, unanimously affirmed, with costs.
Defendant UpHealth Services, Inc. (Services) and plaintiff Needham & Company, LLC entered into an agreement regarding a corporate transaction. Services signed term sheets to acquire six companies, including nonparty Cloudbreak Health, LLC (Cloudbreak). Services then reorganized into a separate entity, UpHealth Holdings, Inc. (Holdings), in a different corporate form. Holdings acquired all the stock of Services and, in turn, distributed all of its stock to the former shareholders of Services. Holdings purchased five of the companies with a combination of cash and shares, distributing 46% of Holdings' stock to those companies (the Acquired Companies). It did not purchase Cloudbreak.
Holdings subsequently combined with nonparty GigCapital2, becoming a wholly owned subsidiary in exchange for shares of GigCapital2 stock. These shares were distributed among Holdings' stockholders, including the Acquired Companies, in proportion to their Holdings shares. The same day that this combination was effected, GigCapital2 purchased Cloudbreak for $110 million. The parties dispute which of these sales and reorganizations was the transaction addressed by their agreement.
The court properly granted plaintiff's summary judgment motion and denied that of defendants. As Services' undisputed successor, Holdings became liable for Services' ongoing obligations (see generally Ladenburg Thalmann & Co. v Tim's Amusements, 275 AD2d 243, 247 [1st Dept 2000]). Those obligations included paying Needham, for a "Transaction," the greater of either $1,000,000 or 2.5% of the "aggregate purchase price" that is "paid to the Company or its securityholders." Although "the Company" explicitly refers to Services, it logically includes Holdings.
Plaintiff argues that the Transaction was GigCapital2's acquisition of Holdings. Defendants argue that it was the formation of Holdings followed by the purchase of the Acquired Companies. Both proceedings fit the contractual definition of "Transaction." The definition of "aggregate purchase price," however, makes clear that a "Transaction" requires the price be paid to Services, Holdings, or the securityholders of either. Therefore, the Transaction could not be Holdings' purchase of the Acquired Companies, in which the purchase price was paid by Holdings. The purchase of Holdings by GigCapital2, by contrast, entailed payment to defendants' securityholders.
Defendants further object that 46% of the consideration from the Holdings-GigCapital 2 deal went to persons other than Services' original shareholders, i.e., the Acquired Companies. Defendants argue that this distribution of consideration renders it absurd to regard that exchange as the Transaction, and awards plaintiff an unfair windfall of a fee based on total consideration. It does neither[*2], "since it is the result of a formula to which the parties agreed" (Accurate Copy Serv. of Am., Inc. v Fisk Bldg. Assoc., L.L.C., 72 AD3d 456, 457 [1st Dept 2010], lv denied 15 NY3d 711 [2010]).
Therefore, the "Transaction" at issue is the combination with GigCapital2.
Additionally, the Transaction included GigCapital2's acquisition of Cloudbreak. The contract specifically provides for a Transaction of which "any portion . . . involves the purchase of a Target Company directly by [an] Other Party." Target Company is defined as a company "with which the Company has negotiated and come to agreement on a detailed acquisition term sheet," as Services had with Cloudbreak. "Other Party," which is not defined, includes GigCapital2. Although Cloudbreak was not included in the attached list of Target Companies, the agreement allows for the addition of Target Companies, under which circumstances the "list shall be promptly updated." This specific provision, requiring that a list be "updated," is not governed by the more general clause that the agreement "may not be amended or modified" except by a signed writing (see Israel v Chabra, 12 NY3d 158, 168 n 3 [2009]; NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 60-61 [1st Dept 2008]). Moreover, even if a writing signed by Services or Holdings were required, defendants may not attempt to limit their liability based upon their own deliberate breach of their obligation to update (see Young v Hunter, 6 NY 203, 207 [1852]; RSB Bedford Assoc., LLC v Ricky's Williamsburg, Inc., 91 AD3d 16, 23 [1st Dept 2011]).
Finally, there is no triable issue of fact as to the size of plaintiff's fee. Defendants do not dispute the total purchase price, but challenge only the value of the stock issued to Holdings' shareholders as part of the combination between GigCapital2 and Holdings. First, this stock was "paid to [Holdings] or its securityholders" and thus constituted part of the aggregate purchase price. Second, the Transaction was the combination of three entities with GigCapital2, the stock of which was listed on the New York Stock Exchange both before and after the Transaction. Therefore, the value of these securities could be determined using the contractual formula for calculating "the value of securities for which there are quotations available on the public market."
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 9, 2024