Ceratosaurus Invs., LLC v B2C Alternative Equity, LLC (2025 NY Slip Op 50079(U))

[*1]

Ceratosaurus Invs., LLC v B2C Alternative Equity, LLC

2025 NY Slip Op 50079(U)

Decided on January 27, 2025

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 27, 2025
Supreme Court, New York County

Ceratosaurus Investors, LLC, BOWAY HOLDINGS, LLC, Plaintiff,

against
B2C Alternative Equity, LLC, RON CHARNIS, Defendant.

Index No. 653758/2024

Counsel for Plaintiffs: Law Offices of Martin Eisenberg, 50 Main Street Suite 1000, White Plains, NY 10606-002
Counsel for Defendants: Jenner & Block LLP, 919 Third Avenue 37th Floor, New York, NY 10016

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 10, 11 were read on this motion to/for DISMISS.
The defendants in this case are not entitled to dismissal of this lawsuit based on their argument that the Trade Confirmation (NYSCEF Doc. No. 2; the Agreement) was not a binding agreement or that it was not binding because it was subject to an Assignment of Claim including customary terms. 
The plain language of the Agreement undermines this position at this stage of the lawsuit. It says that upon execution (i.e., and not upon execution of the Assignment of Claim), the Agreement is binding. In fact, and to avoid confusion, the parties further agreed that fluctuations in market price could not form a predicate to relieving the parties of their obligations under the Agreement:
Binding Effect: Upon execution by Buyers and Seller, this Confirmation shall constitute a binding agreement among the parties; provided that any party may terminate this Confirmation at any time if it is not satisfied with the form of Assignment of Claim or any transaction document(s) contemplated by this Confirmation following a good faith negotiation with the other parties .. [sic] Seller and each Buyer agree and acknowledge that events occurring subsequent to the Trade Date, including movement in market price for the Claim as described in this Confirmation shall not relieve the parties of their obligations hereunder.
(Id. at 4).
To be sure, the parties to the Agreement could have indicated that it was a non-binding term sheet or that it was an agreement solely to enter into good faith negotiations or an agreement to use best efforts to reach an agreement or any such similar words. They did not do that. In fact, they did the opposite. They agreed that the Agreement was binding and "Accepted by" the Guarantor subject to execution of an Assignment of Claim on "customary terms" satisfactory to the buyer and the seller (not the Guarantor).[FN1]

Subject To: This transaction shall be subject to (i) the negotiation, execution and delivery of an acceptable assignment agreement for the Claim (an "Assignment of Claim") that is acceptable to the Buyers and the Seller in their sole and absolute discretion, containing customary representations, warranties, covenants, agreements, indemnities, recourse and other provisions for transactions of this type including on no withdrawals by Seller within 91 days of the petition date of Debtors (other than those disclosed during the confirmatory due diligence); provided that, Seller shall provide to Buyers "step-up" provisions for all such representations, warranties, covenants and agreements that would be made by prior sellers and owners of the Claim(s) ("Step-Up Provisions") and Guarantor shall guaranty all obligations and liabilities of Seller, including the Step-Up Provisions, and any prior sellers or owners of the Claim, (ii) each Buyer's satisfactory due diligence of the Claim, in its sole discretion (including the Claim Amount), (iii) satisfactory completion of each Buyer's KYC/AML process, in its sole discretion, with respect to Seller and Guarantor, and (iv) each Buyer's satisfactory review and approval, in its sole discretion, of the creditworthiness of Seller and Guarantor.
(Id. at 3 [emphasis in original]).
Indeed, the fact that the Agreement was "Accepted by" the Guarantor but the Assignment of Claim did not need to be in a form satisfactory to the Guarantor suggests the opposite of what the defendants argue — i.e., that there was a meeting of the minds as to the terms upon which the transaction contemplated by the Agreement was to be consummated and that the Guarantor was guaranteeing performance.[FN2]

For completeness, the Court notes that although the parties did have certain other conditions (i.e., other than execution of the assignment agreement), these other conditions all are for the benefit of the plaintiffs (e.g., satisfactory review of the creditworthiness of the Seller and the Guarantor).
The Agreement is specific and appears to have been highly negotiated. Pursuant to the terms of the Agreement, the parties agreed that (i) the purchase price was equal to the Claim Amount multiplied by the Purchase Rate, (ii) the Claim Amount was defined as $93,698,233.75 subject to adjustment, (iii) the Purchase Rate was equal to 77%, (iv) 50% of the Purchase Price [*2]was due within two days of execution of the assignment document,[FN3]
 and (iv) the parties were obligated to use their commercial best efforts not merely to enter an agreement, but to close the transaction contemplated by the Agreement:
Claim Amount/Type of Debt: Seller's valid and enforceable, undisputed customer entitlement claim against the Debtors in the Bankruptcy Case in the estimated outstanding principal amount of $93,698,233.75, subject to agreement and adjustment upon mutual agreement of the parties (the "Claim Amount") and any actions, claims and any rights to receive all payments in respect thereof, lawsuits or rights of any nature whatsoever, whether against Debtors or any other person or entity, arising out of or in connection with the Claim Amount, including, but not limited to, all of Seller's right, title and interest, whether legal, equitable or otherwise, in any recoveries arising from or related to any United States Department of Justice forfeiture fund established pursuant to C.F.R. Part 9 or otherwise or any other remission or mitigation process of fund operated or administered by any governmental entity foreign or domestic related to Debtors.
. . . .
Purchase Rate: 77%
Purchase Price: An amount is U.S. dollars equal to the product of the Claim Amount multiplied by Purchase Rate. Each of the Buyers agrees to pay 50% of the Purchase Price to Seller within 2 Business Days of the date of execution and delivery of the Assignment of Claim by wire transfer of immediately available funds.

 . . . .
Settlement Date: Parties agree to use commercially best efforts to close the transaction as soon as practicable. Buyers will provide Seller with draft transaction documentation consistent with the terms and conditions outlined in this Confirmation within 3 business days after the Trade Date.
(Id. at 2-3). 
As such, facially this does not appear to be merely an agreement to agree or where the terms of the agreement are indefinite (cf. Goodstein Construction v City of New York, 80 NY2d 366 [1992]; Sands Bros. & Co., Ltd. v Generex Pharmaceuticals, 279 AD2d 377 [1st Dept 2001]; 180 Water Street Associates, L.P. v Lehamn Brothers Holdings, Inc., 7 AD3d 316 [1st Dept 2004]). The fact that the parties agreed that if following a good faith negotiation of the assignment document, the parties could terminate does not change this result at this stage of the litigation. At most it raises issues of fact as to what the parties meant not properly decided on a motion to dismiss.
The elements of a cause of action sounding in breach contract are: (i) the existence of a valid enforceable contract; (ii) plaintiff performed in accordance with the contract; (iii) the [*3]defendant breached its contractual obligations; and (iv) the defendant's breach resulted in damages (34-06 73, LLC v Seneca Ins. Co., 39 NY3d 44, 52 [2022]). As discussed above, the plaintiffs have met their burden in pleading the existence of a valid enforceable contract.
As to breach, the plaintiffs allege that the defendants breached this agreement by failing to take the steps outlined in the Agreement. More specifically, the well-pled complaint alleges that the defendants failed to accept and execute the Assignment of Claim and did not sign it because of a change in the market price for the claim:
4. Upon execution of the agreement, Plaintiffs forwarded an Assignment of Claim Agreement to B2C to formalize the sale and close the transaction. After B2C's receipt of the Assignment of Claim Agreement, the market price for the claim began to increase. With the market price for the claim increasing and despite numerous requests by Plaintiffs to B2C to proceed with the sale, B2C, apparently experiencing seller's remorse, ceased all communications with Plaintiffs regarding the transaction for a period of two (2) months. B2C's cessation of communications with Plaintiffs regarding the sale of the Claim for two (2) months constituted a breach of, inter alia, B2C's agreement to sell the claim to Plaintiffs irrespective any movements in the market price for the Claim and B2C's agreement to use commercially best efforts to close the transaction as soon as possible.
5. Despite B2C's breach of the agreement and in an effort to induce B2C to honor its agreement to sell the claim to Plaintiffs, Plaintiffs agreed to increase the purchase price for the sale of the claim. However, notwithstanding Plaintiffs' agreement to increase the purchase price for the sale of the Claim, B2C reneged on the sale of the claim to Plaintiffs and breached the agreement by, inter alia, (i) refusing to accept and execute an Assignment of Claim Agreement containing a recourse provision entitling Plaintiffs to a refund of the purchase price paid for the claim in the event the claim was not a valid, enforceable and undisputed claim; (ii) refusing to accept and execute an Assignment of Claim Agreement containing customary representations, warranties, covenants, agreements, indemnities and recourse provisions for the sale of bankruptcy claims; (iii) contriving and fabricating pretextual "disagreements" and manufacturing "impasses" with the Assignment of Claim Agreement terms in breach of B2C's express agreement to negotiate the terms of the Assignment of Claim Agreement in good faith; (iv) refusing to perform and complete "Know Your Customer" and "Anti-Money Laundering" claim verification procedures with the FTX Plan Administrator to prevent the Plaintiffs from performing agreed-to due diligence to verify the claim; and (v) withholding information and documentation from the Plaintiffs to prevent the Plaintiffs from performing agreed-to due diligence to assess the creditworthiness of B2C and Charnis.
(NYSCEF Doc. 1 ¶¶ 4-5). They also allege damages. Taking the allegations as true as the Court must at this stage of the litigation, this sufficiently alleges a valid breach of contract claim (Leon v Martinez, 84 NY2d 83, 87—88 [1994] [citations omitted]).[FN4]

The causes of action sounding in breach of the covenant of good faith and fair dealing are not duplicative of the breach of contract claims and are not subject to dismissal (AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC, 214 AD3d 111 [1st Dept 2023]). The well-pleaded complaint alleges in sum and substance that the defendants failed to provide the necessary documentation for the plaintiffs to conduct due diligence and to perform the Know Your Customer/Anti-Money Laundering (KYC/AML) procedures (NYSCEF Doc. No. 1 ¶¶ 60 — 81). Put another way, the plaintiffs properly allege that the defendants frustrated the plaintiffs' ability to do the due diligence contemplated by the Agreement. This conduct is distinct from the breach of contract claim and is not ripe for dismissal.
The cause of action for unjust enrichment is also not subject to dismissal because the defendants dispute the existence of a valid contract and the scope of the Agreement. According to them, the Agreement is merely a "best efforts" obligation to enter an agreement. Putting aside that the plain meaning of the language of the Agreement appears to torpedo this argument for the reasons set forth above (i.e., the best efforts obligation language is as to closing not as to entering an agreement), pleading in the alternative is appropriate and forecloses dismissal at this stage of the litigation (American Telephone & Utility, Inc. v Beth Israel Medical Center, 307 AD2d 834, 835 [1st Dept 2003]).
However, the claims sounding in constructive trust (second, fifth, eighth, eleventh, and fourteenth causes of action) are dismissed. The elements of a constructive trust are: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance on the promise, and (4) unjust enrichment (In re Gupta, 38 AD3d 445, 446 [1st Dept 2007]). This was an arm's length transaction between the parties. Thus, these causes of action are dismissed.
Dismissal is also required of the cause of action (sixteenth cause of action) seeking attorney's fees without prejudice (cf. RSB Bedford Associates, LLC v Ricky's Williamsburg, Inc., 91 AD3d 16 [1st Dept 2011]). Nothing in the Agreement indicates a prevailing party agreement as to attorney's fees. Indeed, to the extent that the parties did address costs and expenses, they provided that each party should bear their own costs and expenses incurred in connection with the consummation of the transaction contemplated by the Agreement. If discovery reveals otherwise (e.g., that the Agreement is not a fully integrated agreement and that the parties contemplated fee shifting or that customary terms of the assignment include a prevailing parties clause and the parties understood that and agreed to such provision), the plaintiffs may seek leave to amend at such time.
The Court has considered the remaining arguments and finds them unavailing.
Accordingly, it is hereby ORDERED that the motion to dismiss (Mtn. Seq. No. 001) is GRANTED solely to the extent that the causes of action for constructive trust (second, fifth, eighth, eleventh, and fourteenth causes of action) are DISMISSED; and it is further
ORDERED that the cause of action sounding in indemnification of attorneys' fees (sixteenth cause of action) is DISMISSED without prejudice; and it is further
ORDERED that the defendants shall file an answer within 30 days of this decision and order.
DATE 1/27/2025
ANDREW BORROK, J.S.C.

Footnotes

Footnote 1:The Agreement does not provide that the Assignment of Claim must be acceptable however to the Guarantor in its sole discretion, in its reasonable or commercially reasonable discretion, or otherwise.

Footnote 2:The fact that the Agreement indicates that it was subject to the plaintiffs' due diligence of the creditworthiness of the defendant and Guarantor also supports this understanding.

Footnote 3:The fact that the Agreement is specific as to the deposit amount and that the deposit amount is so substantial — i.e., 50% and within 2 days of execution of the assignment agreement underscores that that the material business terms between the parties were reflected and agreed to in the Agreement and additionally supports the understanding that the Agreement to consummate the transaction contemplated by the Agreement is binding.

Footnote 4:For the avoidance of doubt, the breach of contract claims against Ron Charnis are also not dismissed. The Assignment of Claim was not subject to Mr. Charnis's approval. As such and as discussed above, Mr. Charnis is a Guarantor of what appears to be the performance of the parties' obligations such as they are.